UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

SOUTHERN DIVISION AT LONDON

Eastern District of Kentucky
**F I L E D**

NOV 0 6 2018

AT LONDON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

| | |
|---|---|
| DERIC LOSTUTTER, | Case No.: 6:18-cv-00277-KKC |
| Plaintiff, | |
| vs. | **SECOND AMENDED COMPLAINT** |
| COMMONWEALTH OF KENTUCKY, MATT BEVIN, in his official capacity as Governor of the Commonwealth of Kentucky and member of Kentucky Parole Board, ANDY BESHEAR, in his official capacity as the Attorney General of Kentucky, ANGELA TOLLEY, in her official capacity as Director of Kentucky Parole Board, | |
| Defendants | |

**COMES NOW PLAINTIFF**, appearing *pro se*, and amending his Complaint (Doc. 1) pursuant to Fed. R. Civ. P. 15, removing petitions for immediate injunctive relief, amending Counts One and Two, and the Prayer for Relief, and complaining of Defendants, hereby alleges and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1343 for violations of 42 U.S.C. § 1985(3);

2. This Court has jurisdiction under 28 U.S.C. § 1346 because a governmental entity is a Defendant;

3. This Court has jurisdiction under 28 U.S.C. § 1331 and §1343 because this matter arises under the United States Constitution and seeks equitable and other relief for the deprivation of constitutional rights under the color of state law and because the claims and allegations herein allege and ask a federal question and/or federal questions;

1

4. This Court has jurisdiction to award attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920;

5. This Court has jurisdiction to grant declatory relief pursuant to 28 U.S.C. § 2201;

6. This Court has jurisdiction to grant declatory relief pursuant to 28 U.S.C. § 2202;

7. This Court has personal jurisdiction over Defendant Matt Bevin, the Governor of Kentucky, Defendant Commonwealth of Kentucky, Defendant Andy Beshear, Attorney General of the Commonwealth of Kentucky, and Defendant Angela Tolley, Director of Kentucky Parole Board, who are state and government officials who work and reside in the Eastern District of Kentucky;

8. Venue is proper because the injuries and actions alleged herein occurred and/or are continuing to occur within the Commonwealth of Kentucky, to include the Eastern District of Kentucky;

9. Venue is proper under 28 U.S.C. § 1391(b)(1), because Defendants are state and government officials working in the Eastern District of Kentucky;

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because the majority of the events giving rise to these claims occurred and will continue to occur in the Eastern District of Kentucky;

## PARTIES

11. Plaintiff is a citizen of Kentucky, over the age of eighteen (18) years, and has a mailing address of 26 Saylor Street, Manchester, Kentucky, 40962;

12. Defendant, Commonwealth of Kentucky, is a governmental entity whose representative has a mailing address of 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601;

13. Defendant, Andy Beshear, in his official capacity as Attorney General of Kentucky, has a mailing address of 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601

14. Defendant, Angela Tolley in her official capacity as Director of Kentucky Parole Board has a mailing address of P.O. Box 2400, Frankfort, KY 40602;

15. Defendant, Matt Bevin, in his official capacity as Governor of the Commonwealth of Kentucky, has a mailing address of 700 Capital Avenue, Suite 100 Frankfort, Kentucky 40601;

**CLAIMS**

**COUNT ONE**

**(Unfettered Official Discretion and Arbitrary Treatment in Violation of First Amendment to the United States Constitution and 42 U.S.C § 1983)**

16. At all times Defendants have acted under the color of state law;

17. Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiff of his right to be free from unconstitutional prior restraints and/or unconstitutional time, place and manner regulations in seeking the restoration of his voting rights—a right guaranteed to Plaintiff by the First Amendment to the United States Constitution and 42 U.S.C. § 1983;

18. Because registration is a prerequisite to and/or enables voting in primary and general elections, it, as well, is protected by the First Amendment. *see Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 400 (2000) (Breyer, J., concurring) ("[A] decision to contribute money to a campaign is a matter of First Amendment concern—not because money is speech (it is not); but because it enables speech.") (emphasis in original).

3

19. The First Amendment prohibits government officials exercising unfettered discretion and unbridled power to issue or deny licenses or permits to engage in any First Amendment-protected speech, expressive conduct, association, or any other protected activity or conduct. *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130-33 (1992) ("The First Amendment prohibits the vesting of such unbridled discretion in a government official."); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763-64 (1988) ("[A] law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official."); *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 153 (1969) ("[A government] may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade according to their own opinions regarding the potential effect of the activity in question on the 'welfare,' 'decency,' or 'morals' of the community."); *Cox v. State of Louisiana*, 379 U.S. 536, 554-58 (1965); *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958) ("It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."); *Niemotko v. State of Md.*, 340 U.S. 268, 271-73 (1951) (striking down prior restraint on use of parks, noting that hearing focused on "alleged refusal to salute the flag, their views on the Bible, and other issues irrelevant to unemcumbered [sic] use of the public parks"

4

and that Mayor testified applicant's demeanor at hearing doomed application); *Saia v. People of State of New York*, 334 U.S. 558, 560-62 (1948) (striking down prior restraint scheme of "uncontrolled discretion" to grant or deny permits for use of loud-speakers) ("Annoyance at ideas can be cloaked in annoyance at sound.")

20. The First Amendment requires that time, place and manner regulations not be arbitrary or arbitrarily administered;

21. If decisions as to the time, place, and manner of voting are left to the discretions of government officials, then the regulation is invalid. "A government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" *Forsyth Cnty.*, 505 U.S. at 130-31 (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)); *Poulos v. State of New Hampshire*, 345 U.S. 395, 405-08 (1953);

22. According to the Brennan Center for Justice at the New York University School of Law, more than 243,000 Kentuckians are unable to cast a ballot due to a felony conviction — nearly 181,000 of which have already completed their sentences;

23. More than 22 percent of African-American voters are disenfranchised at the polls — one of the highest rates in the country and three times the national rate;

24. Kentucky Constitution § 145 prohibits felons, among other named classes of people, from voting;

25. Kentucky Revised Statute §196.045 is a statute that outlines the restoration of civil liberties, including without limitation, voting rights for felons who are citizens of the Commonwealth of Kentucky;

5

26. Kentucky Revised Statute §196.045 is a statute that was enacted after current Governor of the Commonwealth of Kentucky, Matt Bevin, repealed an Executive Order which allowed automatic restoration of voting rights of all non-violent felony offenders;

27. Normally, the right to vote for American citizens is guaranteed by the United States Constitution, without need for application to the Federal Government;

28. Kentucky is one of three (3) states which allow for permanent voter disenfranchisement;

29. Kentucky's felony disenfranchisement prevents one in every four African-Americans from voting in Kentucky elections;

30. As of 2017, The League of Women Voters reports that more than three-hundred-thousand (300,000) Kentuckians are barred from voting due to a felony conviction;

31. Seventy-eight (78) percent of Kentuckians who have completed their felony conviction sentences are unable to vote in Kentucky elections;

32. Upon his first year in office, Governor Matt Bevin denied every single application for restoration of voter rights filed in the Commonwealth of Kentucky by felons seeking to have their rights to vote restored;

33. One (1) in every eleven (11) citizens in Kentucky are ineligible to vote because of voter disenfranchisement in the Commonwealth of Kentucky;

34. Kentucky's application process to restore civil rights, including the right to vote, costs applicants money to file the application;

35. 9.1 percent of Kentuckians cannot vote in elections due to Kentucky's voter disenfranchisement laws;

6

36. Kentucky's application process to restore civil rights, including the right to vote, is not guaranteed to restore voter's rights and instead, approval is left up to the discretion of the sitting Governor;

37. The application to restore the rights of disenfranchised Kentucky voters states that it is the Governor's "prerogative" to approve or deny each applicant the right to vote;

38. Applicants then can be denied restoration of their right to vote or hold public office for any reason, including miniscule offenses, admission of illicit drug, alcohol, or other substance abuse, or even a Governor's personal beliefs, bias, or political views;

39. Applicants then can also be granted restoration of their right to vote or hold public office for any reason, including affiliation with church organizations, political family ties, an applicant's personal appearance, an applicant's political views which the Governor favors, or for no reason at all other than how the Governor is feeling that day;

40. Leaving discretion to authorize or reject First Amendment-protected activity unconstrained by law severely enhances the risk for viewpoint discrimination;

41. The Governor may deny restoration of an applicant's right to vote on pretextual grounds while secretly basing his decision on the applicant's race, faith (or lack thereof), or political affiliation and/or viewpoints;

42. The decision-making process on whether to approve or deny an applicant the right to vote and/or hold public office is arbitrary;

43. First Amendment doctrine does not require Plaintiff to demonstrate actual evidence of discriminatory and/or arbitrary treatment;

7

44. The risk of such discriminatory and/or arbitrary treatment in the absence of any constraints is sufficient. *Forsyth Cnty.*, 505 U.S. at 133 n.10; City of Lakewood, 486 U.S. at 769;

45. Kentucky's voter disenfranchisement laws and re-enfranchisement laws impose a prior restraint which renders Kentucky's voter disenfranchisement and re-enfranchisement laws invalid;

46. There is an extensive backlog of applications that remain unreviewed by the Governor;

47. There are no laws, rules, or regulations that set any time limits for application review, rejection and/or approval;

48. The application process to restore voting rights and/or rights to hold public office imposes a severe restriction on felons seeking to regain their voting rights—effectively a second sentence above and beyond that imposed by a federal or state judge—and is not narrowly tailored to any legitimate government interest;

49. The Governor has also exercised his unfettered discretion and unchecked power to reduce the number of civil rights restoration applicants, rejecting tremendous numbers of applicants, approving just twenty-four (24) applicants from the time the Governor took office in December of 2015 to April of 2017;

50. Among those approved as mentioned in this Complaint, were Kenneth Lee and Ruth Gambill, both of which pled guilty to paying money to Judge-Executive Tim Conley in exchange for construction contracts—an approval which allows felons who previously corrupted public office, the right to hold public office and influence elections;

51. Kentucky Revised Statute § 196.045 violates the First Amendment of the United States Constitution;

8

52. Kentucky Revised Statute § 196.045 is racially discriminatory;

53. Kentucky Revised Statute § 196.045 is unconstitutional;

54. Kentucky Revised Statute § 196.045 violates 42 U.S.C. § 1983;

55. Kentucky Revised Statute § 196.045 unfairly tips the scales of equality in the democratic voting process;

56. Kentucky Constitution § 145 is unconstitutional and should be repealed and/or modified to allow non-violent felony offenders the right to vote and hold public office;

57. Kentucky Revised Statute § 196.045 should be modified and/or repealed;

58. Restoration of non-violent felony offender's voting rights should be restored automatically upon completion of the offender's sentence of conviction at no cost;

## COUNT TWO

**(Arbitrary Allocation of the Franchise in Violation of Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983)**

59. The factual allegations contained in the preceding paragraphs are incorporated into Count Two, as though fully set forth herein;

60. Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violations of the Fourteenth Amendment to the United States Constitution;

61. Kentucky Constitution § 145 prohibits citizens of Kentucky who are non-violent felons from voting;

62. Non-violent felons residing in the Commonwealth of Kentucky prohibited from voting and/or holding public office by Kentucky Constitution § 145 would otherwise be able to vote and/or hold public office if those non-violent felons lived in other states upon

completion of their sentence, and as such, Kentucky Constitution § 145 violates the Fourteenth Amendment to the United States Constitution's Equal Protection Clause;

63. The Fourteenth Amendment to the United States Constitution forbids and prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." *U.S. CONST. amend. XIV, § 1.*

64. The Equal Protection Clause of the Fourteenth Amendment protects the right to vote and applies to both "the initial allocation of the franchise" and "the manner of its exercise." *Bush v. Gore,* 531 U.S. 98, 104 (2000);

65. Defendants have the inherent authority, under current Kentucky Revised Statutes, to grant or deny applications for the restoration of civil rights;

66. Defendants' discretion in allocating the franchise to ex-felons is absolute and purely arbitrary in that Defendants' decisions are unconstrained by any laws or rules;

67. The restoration scheme is prone to arbitrary treatment;

68. This Complaint alleges instances of arbitrary treatment, *e.g.*, the restoration of civil rights to felons who have corruptly influenced elected officials with monetary payoffs, versus the denial of other applicants—which is the inevitable result of a voting rights restoration or licensing scheme devoid of any legal constraints on official discretion. *Bush v. Gore,* 531 U.S. at 104;

69. Kentucky Constitution and Kentucky Revised Statute require that a felon obtain the Governor's permission to regain his or her right to vote and/or hold public office, and therefore turn over the allocation of the franchise to the arbitrary determinations of state officials;

70. Kentucky Revised Statute does not regulate the governor's discretionary authority to grant or deny applications for the restoration of voting rights and/or rights to hold public office;

71. As a voter licensing scheme of unfettered official discretion and devoid of any standards, it also violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

72. At all relevant times, Defendants have acted under color of state law;

73. Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiff of his right to non-arbitrary treatment in the state government's allocation of the right to vote to ex-felons—a right which is guaranteed to Plaintiff by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

**COUNT THREE**

**(Lack of Definitive Time Limits for Determinations on Voting Rights Restoration Applications in Violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983)**

74. The factual allegations contained in the preceding paragraphs are incorporated into Count Three, as though fully set forth herein;

75. Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the First Amendment to the United States Constitution;

76. The First Amendment to the United States Constitution states, in part that: "Congress shall make no law…abridging the freedom of speech, or of the press; or the right of the

people peaceably to assemble, and to petition the Government for a redress of

grievances." *U.S. Const. amend. I, § 1;*

77. The First Amendment protects the right to vote because voting is both a form of speech

   or expressive conduct and a means of political association. *Doe v. Reed,* 561 U.S. 186,

   195-96 &n.1 (2010); *id.* At 224 (Scalia, J., concurring) ("We have acknowledged the

   existence of a First Amendment interest in voting…") (citing *Burdick v. Takushi,* 504

   U.S. 428 (1992)); *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000);

   *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 354-57 (1997); *McIntyre v. Ohio*

   *Elections Comm'n*, 514 U.S. 334, 341-43 (1995); *Burdick v. Takushi*, 504 U.S. 428, 434,

   437-39 (1992); *Norman v. Reed*, 502 U.S. 279, 288-90 (1992); *Tashjian v. Republican*

   *Party of Connecticut,* 479 U.S. 208, 214-17 (1986); *Munro v. Socialist Workers Party*,

   479 U.S. 189, 193, 199 (1986); *Anderson v. Celebrezze*, 460 U.S. 780, 787-89 (1983);

   *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979);

   *Storer v. Brown*, 415 U.S. 724, 728-29 (1974); *Kusper v. Pontikes*, 414 U.S. 51, 56-58

   (1973); *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968);

78. First Amendment doctrine clearly holds that "a prior restraint that fails to place limits on

   the time within which the decisionmaker must issue the license is impermissible."

   *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990) (citing *Freedman v. State of*

   *Maryland*, 380 U.S. 51, 59 (1965)). "Where the licensor has unlimited time within which

   to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled

   discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates

   the risk of indefinitely suppressing permissible speech." *Id.* at 227; see also *Riley v. Nat'l*

   *Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 802 (1988) ("[D]elay compels

the speaker's silence. Under these circumstances, the licensing provision cannot stand.");

*United States v. Frandsen*, 212 F.3d 1231, 1238-40 (11th Cir. 2000);

79. The Governor of Kentucky is not bound by any reasonable, definite time limits in processing and reaching final decisions on applications for the restoration of civil rights;

80. Kentucky Revised Statute is devoid of any such time limits for granting or denying applicants their right or license to vote and/or hold public office;

81. Applicants wait years to finally receive a determination on their applications and the backlog of unreviewed applications numbers in the thousands;

82. The growing backlog of applicants is making longer delays more common;

83. The Governor and those appointed to review applications process individual applications at their own chosen speed and may deliberately fast-track selective applicants while delaying and/or outright denying others at their sole discretion;

84. Since no provision of Kentucky Revised Statute or the Kentucky Constitution require the Governor to process and adjudicate an application for restoration of civil rights within a definite, reasonable time period, the lack thereof creates a risk of arbitrary delays and arbitrary continued disenfranchisement and therefore violates the First Amendment;

85. Kentucky Revised Statute mandates that an an ex-felon obtain the Governor's permission in order to regain his right to vote and/or hold public office, and therefore function as a prior restraint on First Amendment-protected Voting;

86. Kentucky Revised Statutes contain no time constraints on the processing of and determinations regarding applications for the restoration of civil rights, making the system prone to arbitrary treatment;

87. As a scheme of unfettered official discretion with no reasonable time limits, Kentucky's voter rights restoration process violates the First Amendment to the United States Constitution;

88. At all relevant times, Defendants have acted under color of state law;

89. Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiff of his right to an ex-felon voting rights restoration scheme with definite time limits on the Governor's determinations, which is guaranteed to Plaintiff by the First Amendment to the Constitution and 42 U.S.C. §1983;

## COUNT FOUR

### (Undue Burden on the Right to Vote in Violation of the First and Fourteenth Amendment)

90. The factual Allegations contained in the preceding paragraphs are incorporated into Count Four, as though fully set forth herein;

91. Under the First and Fourteenth Amendments to the United States Constitution, any burden on the right to vote must be balanced against a state's interest in that requirement. The Supreme Court has set forth the following test:

> [T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S., at 788, 103 S.Ct., at 1569–1570; *see also id.*, at 788–789, n. 9, 103 S.Ct., at 1569–1570, n. 9.

14

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

92. Kentucky Revised Statute § 196.045 and the combined lack of definite time in which to approve an application, effectively creates an unreasonable—often years in length—time period in which an applicant must wait for determination with regard to their application to restore their right to vote and/or hold public office;

93.  This wait creates a *de facto* second sentence for the ex-felon;

94. This severe restriction on the right to vote and/or hold public office is not justified by any state interest of compelling importance;

95. This severe restriction on the right to vote and/or hold public office is not narrowly drawn to any state interest of compelling importance;

96. The additional waiting period imposed *de facto* upon an ex-felon who has applied for restoration of their civil rights is neither compelling nor important;

97. Since the *de facto* waiting period imposed by the backlog and indefinite time in which the approval process can take with regard to applications to restore civil rights in the Commonwealth of Kentucky is not justified by any compelling or important state interest, it violates the First and Fourteenth Amendments to the United States Constitution;

98. At all relevant times, Defendants have acted under color of state law;

99. Defendants, acting under color of state law, have unduly burdened and will continue to unduly burden Plaintiff's right to vote, thereby depriving him of an opportunity to regain his voting rights;

15

100.    The right to vote free of undue burdens is guaranteed to Plaintiff by the First and

Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983

101.    The right to vote free is an inherent right of the American people;

**WHEREFORE**, Plaintiff, Deric Lostutter, *pro se*, respectfully requests the Court to

grant the following relief:

1. Assume jurisdiction over this matter;

2. If appropriate, certify this matter as a class action pursuant to Rules 23(a) and 23(b)(2) of
   the Federal Rules of Civil Procedure, directing Plaintiff to add additional Plaintiffs and
   file the appropriate paperwork;

3. If certified as a class action, appoint class counsel pursuant to Federal Rule of Civil
   Procedure 23(g);

4. Declare that Kentucky's civil rights restoration process and voter disenfranchisement
   laws are unconstitutional and violate the First and Fourteenth Amendments to the United
   States Constitution;

5. Repeal of Kentucky Revised Statute §196.045;

6. If repeal is not appropriate, modification of Kentucky Revised Statute §196.045;

7. Declare Kentucky Constitution § 145 to be unconstitutional;

8. Repeal of Kentucky Constitution § 145;

9. Permanent injunctive relief enabling all non-violent felony offenders who have
   completed their sentence of conviction the right to vote in Kentucky elections;

10. Issue a permanent injunction, enjoining Defendants, their respective agents, officers,
    employees, successors, and all persons acting in concert with them ("Defendants"), from

16

enforcing Kentucky Revised Statute § 196.045, Kentucky Constitution § 145, and other

voter disenfranchisement laws under Kentucky's Constitution;

11. Issue a permanent injunction, enjoining Defendants from requiring Plaintiff and other

Kentuckians to petition the Governor and/or any other government or private agency to

secure the restoration of their voting rights and rights to hold public office

12. Issue a permanent injunction requiring Defendants to revise any applications, websites,

and or other informational materials to reflect that Plaintiff and other non-violent felony

offenders may register to vote and/or hold public office upon completion of their

sentences;

13. Issue a permanent injunction requiring Defendants to provide training and notification of

this judgment to all necessary parties, to include but not be limited to county and state

officials, election officials and supervisors of elections, and ordering the same not to

reject voter registration applications of Plaintiff as well as any non-violent felony

offender;

14. Retain jurisdiction to enforce this order;

15. Grant Plaintiff reasonable fees and costs, to include but not be limited to any attorney's

fees accrued at the end of this litigation as a result of bringing this action pursuant to 42

U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law; and

16. Any and other relief this Court deems just and proper.

Dated this _7th_ day of _November_, 2018.

Deric Lostutter
Plaintiff *pro se*
26 Saylor Street
Manchester, Kentucky 40962
(606) 731-1174

18