**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT LONDON**
**CIVIL ACTION NO. 6:18-277-KKC**

**DERIC LOSTUTTER,**                                                                    **PLAINTIFF,**

**v.**

**COMMONWEALTH OF KENTUCKY, ET AL.,**                                    **DEFENDANTS.**

*** *** *** ***

## COMMONWEALTH OF KENTUCKY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

The Defendant, Commonwealth of Kentucky ("Commonwealth"), has moved the Court to dismiss all claims brought against it by the Plaintiff, Deric Lostutter ("Lostutter"), in his Second Amended Complaint (DE 12).[1]  As explained below, Lostutter lacks standing to pursue certain claims, while all of his claims fail on the merits as a matter of law.

## INTRODUCTION

Lostutter pleaded guilty to two federal felonies in March 2017.  He was sentenced to two years of imprisonment followed by three years of supervised release.  He was also ordered to pay a $5,200 criminal fine and assessment.  As a collateral consequence, Lostutter lost the right to vote in Kentucky.  Since its founding in 1792, every version of Kentucky's constitution has prohibited a convicted felon from voting without a gubernatorial pardon or restoration of civil rights.

---

[1] Lostutter filed a Second Amended Complaint without complying with the requirement of Fed. R. Civ. P. 15(a)(2) that he first secure consent of the opposing parties or the Court's leave.  (*See* DE 12.)  Through this motion, the Commonwealth provides notice that it consents to Lostutter's filing of his Second Amended Complaint, and the Commonwealth's motion to dismiss is directed to the claims contained within the Second Amended Complaint (and to the extent required, all other complaints).

Notably, forty-eight states and the District of Columbia have some form of criminal disenfranchisement.

Lostutter brought this action to challenge Kentucky's prohibition on felon voting and the procedure through which a felon must go to secure restoration of the right to vote. Lostutter's claims rest upon his interpretation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

As a threshold jurisdictional matter, Lostutter does not have standing to pursue his restoration process claims because he has not sought a pardon or restoration of rights from the Governor. As to the merits, courts have uniformly rejected challenges to state laws that disenfranchise felons because the Fourteenth Amendment expressly permits disenfranchisement. Courts have also upheld state laws related to the restoration of voting rights even when such laws provide an executive with discretion to determine which felons should have their voting rights restored. Lostutter's claims must be dismissed.

## FACTUAL BACKGROUND

### I.     Kentucky's laws related to felon voting.

The Kentucky Constitution prohibits any person from voting who has been "convicted in any court of competent jurisdiction of treason, or felony,[2] or bribery in an election, or of such high misdemeanor as the General Assembly may declare." Ky. Const. § 145. Some form of this language has appeared in all four of Kentucky's constitutions.[3]

---

[2] In Kentucky, a felony is generally defined as any crime for which the penalty may include a term of imprisonment of at least one year. *See* Ky. Rev. Stat. Ann. § 532.020(1); Ky. Rev. Stat. Ann. § 532.060(2).

[3] First Const. of Ky., art. VIII, § 2 ("Laws shall be made to exclude from office and from suffrage, those who shall thereafter be convicted of bribery, perjury, forgery, or other high crimes or misdemeanors . . . ."); Second Const. of Ky., art. VI, § 4 (same); Third Const. of Ky., art. VIII, § 4 (same); Fourth Const. of Ky., § 145 ("Persons convicted in any court of competent jurisdiction of treason, or felony, or bribery in an election, or of such high misdemeanor as the General Assembly may declare shall operate as an exclusion from the right of suffrage, but persons hereby excluded may be restored to their civil rights by executive pardon.").

Kentucky is not alone in prohibiting felons from voting. Forty-eight states and the District of Columbia have some limit on a felon's right to vote, though the specific limitations vary by jurisdiction. *See* Nat'l Conf. of State Legislatures, Felon Voting Rights (Nov. 20, 2018), available at: www.ncsl.org/research/elections-and-campaigns/felon-voting-rights.aspx#recent (last accessed Nov. 26, 2018).

Kentucky's Constitution permits a felon to regain voting privileges through a gubernatorial pardon or restoration of rights. Ky. Const. § 145. The Kentucky Department of Corrections is required to inform eligible felony offenders of the process for restoration of civil rights and to take certain actions to oversee the process. Ky. Rev. Stat. Ann. § 196.045.

## II.     Lostutter is a convicted felon.

In 2017, Lostutter pleaded guilty to violating 18 U.S.C. § 371 (conspiracy to commit offense or to defraud the United States) and 18 U.S.C. § 1001(a)(2) (making a false statement to an FBI agent). *See United States v. Deric Lostutter*, No. 5:16-cr-062-DCR, Judgment, DE 109 (E.D. Ky. Mar. 8, 2017) (attached as Ex. 1). Both crimes are felonies under the United States Code. *See* 18 U.S.C. § 371 (establishing a maximum of five years imprisonment for conspiracy); 18 U.S.C. § 1001(1) (establishing a maximum of five years imprisonment for false statement); 18 U.S.C. § 3559 (defining a Class E felony as an offense punishable by "less than five years but more than one year"). On March 8, 2017, Lostutter was sentenced to twenty-four months on each count to run concurrently and was ordered to pay a criminal fine and assessment totaling $5,200. (Ex. 1.) Lostutter was also ordered to serve a three-year period of supervised release on each count to run concurrently. (Ex. 1.)

As part of his supervised release, Lostutter was forbidden from possessing a device with access to the Internet without his parole officer's permission. (Ex. 1.) Lostutter admitted to

violating this condition during a revocation hearing on October 12, 2018. *See United States v.*
*Deric Lostutter*, No. 5:16-cr-062-DCR, Petition for Warrant or Summons for Offender Under
Supervision, DE 148 (E.D. Ky. Sept. 13, 2018) (attached as Ex. 2); Order, DE 174 (E.D. Ky. Oct.
12, 2018) (attached as Ex. 3).  As punishment, the terms of Lostutter's supervised release were
modified to include weekend confinement for four consecutive weekends at a location designated
by the Bureau of Prisons.  (Ex. 3.)  The remaining terms and conditions of Lostutter's supervised
release remained in effect.  (Ex. 3.)  To date, Lostutter has not satisfied payment of the $5,200 fine
and assessment issued as part of his original judgment, but he is required to make monthly
payments of $50.00.  *See United States v. Deric Lostutter*, No. 5:16-cr-062-DCR, Order, DE 177
(E.D. Ky. Nov. 9, 2018) (attached as Ex. 4).

### III.    Lostutter files his complaint.

Lostutter initiated this action on October 29, 2018, by filing his Complaint and Motion for
Immediate Temporary and Permanent Injunctive Relief.  (DE 1.)  The original complaint named
only the "Commonwealth of Kentucky" as a defendant.  (DE 1.)  The original complaint requested
immediate and permanent injunctive relief to enable all "non-violent felony offenders the right to
vote in Kentucky elections" and sought the repeal or modification of Ky. Rev. Stat. Ann.
§ 196.045, a Kentucky statute related to restoration of rights procedures. (DE 1 at 3-4; DE 7 at 1.)
The Court denied Lostutter's request for immediate injunctive relief, which it treated as a request
for a temporary restraining order, by an Order entered on October 31, 2018.  (DE 7 at 2.)  In that
same Order, the Court ordered the United States Marshal to serve the Commonwealth with the
complaint.  (DE 7 at 3.)  The Commonwealth was served with the original complaint on November
8, 2018.  (DE 16.)

Lostutter  subsequently  filed  his  Amended  Complaint  and  Motion  for  Immediate

Temporary and Permanent Injunctive Relief on November 2, 2018.  (DE 10.)  The amended complaint named the Commonwealth of Kentucky and added the Governor, Attorney General, and Parole Board Director (each in their official capacities) as defendants.[4]  (DE 10.)  The amended complaint asserted four constitutional claims.  (DE at 13 at 1.)  After reviewing the amended complaint and motion, the Court denied Lostutter's renewed motion for a temporary restraining order by an Order entered on November 7, 2018.  (DE 13 at 2.)  Because the named defendants were sued only in their official capacities, the Court noted that the claims were directed toward the "Commonwealth of Kentucky" and ordered the United States Marshal to serve only the Commonwealth through the Attorney General.  (DE 13 at 2.)  The Commonwealth was served with the amended complaint on November 15, 2018.  (DE 17 at 2.)

Lostutter filed his Second Amended Complaint on November 6, 2018.  (DE 12.)  The Second Amended Complaint mostly mirrors the amended complaint but adds new paragraphs directed at Section 145 of the Kentucky Constitution.  (*See, e.g.*, DE 12 ¶¶ 24, 56, 61-62, Prayer for Relief ¶¶ 7-8.)  The Commonwealth has not received service of the Second Amended Complaint, but learned of its existence through PACER.

## LEGAL STANDARD

Issues of standing are properly decided via a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[5]  *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008).  When deciding a Rule 12(b)(1) motion, all allegations of the complaint must be considered

---

[4] Lostutter also named the Governor in his official capacity as a member of the Kentucky Parole Board, but such a designation is incorrect as the Governor is not a member of the board.  *See* Ky. Rev. Stat. Ann. § 439.320(1) (establishing membership of the board).

[5] The factual statement in this memorandum includes details about Lostutter's past criminal history.  These details do not appear in any of Lostutter's complaints.  Nonetheless, the Commonwealth's motion to dismiss is not converted to one for summary judgment because a court may consider public records, including other court proceedings, at the motion to dismiss stage.  *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010).

true and construed in the light most favorable to the plaintiff. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The plaintiff does, however, bear the burden of proving jurisdiction. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

The Court's analysis of a Rule 12(b)(6) motion turns on whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must view the allegations in the light most favorable to the non-moving party and must accept as true all well-pleaded facts. *Severe Records, LLC v. Rich*, 658 F.3d 571, 578 (6th Cir. 2011). The Court need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Although pro se litigants are treated to "less stringent standards," they must still meet basic pleading standards. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). And, "'[l]iberal construction does not require a court to conjure up allegations on a litigant's behalf.'" *Id.* (quoting *Erwin v. Edwards*, 22 Fed. App'x 579, 580 (6th Cir. 2001).

## ARGUMENT

Construed liberally, Lostutter's four causes of action can be divided into two classes: those that generally challenge the deprivation of a felon's right to vote in Kentucky and those that challenge the process through which a felon must go to have his or her voting rights restored.[6] Lostutter's process claims must be dismissed because he lacks standing to pursue them and

---

[6] Lostutter's Second Amended Complaint does not classify these claims so neatly, and elements of both avenues of attack are dispersed throughout the complaint's four counts. For example, the headings given to Counts I and III of the Second Amended Complaint indicate that Lostutter is attacking the reinstatement process, although attacks against the process are in each of the four counts.

because they fail as a matter of law.  Lostutter's deprivation claims must be dismissed due to binding precedent establishing his failure to state a legally viable claim.

## I.     Lostutter lacks standing to bring certain of his claims.

Under the Constitution, federal courts may decide only cases and controversies.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," and a fundamental premise of the doctrine is to respect the separation of powers in the federal Constitution.  *Id.*  Therefore, the concept of standing "limits the category of litigants empowered to maintain a lawsuit in federal court."  *Id.*

To establish standing, Lostutter must show "an injury in fact, fairly traceable to the defendant's conduct, that is likely to be redressed by a favorable decision from the court."  *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Certain claims in Lostutter's Second Amended Complaint fail this basic requirement.

### A.     Lostutter lacks standing to challenge the restoration process in Section 145 of the Kentucky Constitution because he has not sought or been denied restoration.

Lostutter's claims regarding the restoration of voting rights process in Section 145 of the Kentucky Constitution can be boiled down to two allegations.  First, Lostutter claims that the process is unconstitutional because it places discretion with the governor; in other words, there are not, in his view, definite standards by which requests for restoration of rights must be judged.  Second, Lostutter claims that the restoration process is unconstitutional because there are no applicable timing requirements for the consideration of an application.  Lostutter lacks standing to pursue either claim.

1.      **The restoration of rights process under the Kentucky Constitution.**

Section 145 of the Kentucky Constitution provides that any felon excluded from the right to vote "may be restored to their civil rights by executive pardon."  Kentucky's high court has interpreted Section 145 to mean that a governor may restore a felon's right to vote and hold office. *See Arnett v. Stumbo*, 153 S.W.2d 889, 890-91 (Ky. 1941); *see also Cheatham v. Commonwealth*, 131 S.W.3d 349, 351 (Ky. App. 2004) (discussing *Arnett* and noting that a "pardon" under Section 145 is limited to restoring the right to vote and hold office).  The governor's power under Section 145 extends to individuals who are convicted of a felony under federal law.  *Arnett*, 153 S.W.2d at 891.  And, the Kentucky Constitution does not place any time constraints on the governor's power to restore voting rights.  *Cf. Fletcher v. Graham*, 192 S.W.3d 350, 359 (Ky. 2006) (holding that the lack of a temporal restriction in § 77 of the Kentucky Constitution means that a governor may issue a pardon at any time, even pre-indictment).  Because Section 145 is a self-executing provision, no other statute or law is necessary for its operation.  *Arnett*, 153 S.W.2d at 890.

2.      **Lostutter has failed to avail himself of the process under Section 145.**

Lostutter did not plead that he has applied for and been denied a restoration of rights pursuant to Section 145 of the Kentucky Constitution.  (*See generally* DE 12.)  This failure is fatal.  A federal court plaintiff is required to allege sufficient facts in a complaint to establish standing to pursue his or her claims.  *See Spokeo*, 136 S. Ct. at 1547 ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975))).  Lostutter's lack of pleading sufficient facts means that he cannot pursue his claims that the restoration of rights process is unconstitutional because he has not invoked the Court's subject matter jurisdiction by demonstrating his standing.

In a similar case, a plaintiff brought suit in federal court in Virginia on claims that Virginia's process to restore a felon's right to vote was unconstitutional because it "gives the Governor of Virginia unfettered authority to decide which applications to approve or deny" and was "capricious and arbitrary." *El-Amin v. McDonnell*, No. 3:12-cv-538, 2013 WL 1193357, at *1 (E.D. Va. Mar. 22, 2013). The court dismissed these claims, holding that because the plaintiff had "not applied for restoration of his voting rights, he has suffered no denial, or other injury, that would allow him to challenge the *reinstatement process*." *Id.* at *5 (emphasis in original). Lostutter brings similar claims here, yet he has failed to seek a restoration of his rights. Therefore, Lostutter's process claims must be dismissed for lack of standing.

Although the Court may dismiss Lostutter's claims based on Fed. R. Civ. P. 12(b)(1) due to his failure to plead sufficient facts to establish his standing, the Court may alternatively consider the two declarations attached to this memorandum. (*See* Decl. of Selina Bowman, attached as Ex. 5; Decl. of John Hall, attached as Ex. 6.) The declarations, one from an employee of the Office of the Governor and one from an employee of the Department of Corrections' Division of Probation and Parole, establish that Lostutter has not applied for a restoration of civil rights. (Ex. 5 at ¶ 5; Ex. 6 at ¶ 7.) Again, because he has not sought restoration, Lostutter has not suffered an injury in fact, *see El-Amin*, 2013 WL 1193357, at *5, which is the "'[f]irst and foremost' of standing's three elements," *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Envt.*, 523 U.S. 83, 103 (1998)).

**B.      Lostutter lacks standing to challenge Ky. Rev. Stat. Ann. § 196.045.**

Lostutter also challenges the constitutional validity of Ky. Rev. Stat. Ann. § 196.045, although the grounds upon which he bases this challenge are unclear. Ky. Rev. Stat. Ann. § 196.045 does not deprive any person of any right; rather, Section 145 of the Kentucky Constitution

deprives felons of the right to vote.  Regardless, Lostutter lacks standing to challenge Ky. Rev. Stat. Ann. § 196.045 because the statute does not apply to him.  Therefore, he has not suffered the type of injury in fact required to confer standing.

As previously mentioned, Section 145 of the Kentucky Constitution is self-executing. Nonetheless, the General Assembly passed Ky. Rev. Stat. Ann. § 196.045 in 2001 to establish a process for eligible felony offenders to gain information about restoration of voting rights and to establish certain procedures for the Commonwealth to take once an application for restoration is received.  The Kentucky Department of Corrections oversees the process and has promulgated an administrative regulation, policy, and application that implements Ky. Rev. Stat. Ann. § 196.045. *See* 501 KAR 6:270, Section 1 (incorporating Policy Number 27-26-01, Assistance to Former Offenders and Dischargees).[7]

Ky. Rev. Stat. Ann. § 196.045 defines "eligible felony offender" as follows:

(2) As used in this section, "eligible felony offender" means a person convicted of one (1) or more felonies who:
    (a) Has reached the maximum expiration of his or her sentence or has received final discharge from the Parole Board;
    (b) Does not have any pending warrants, charges, or indictments; and
    (c) Has paid full restitution as ordered by the court or the Parole Board.

Lostutter has not "reached the maximum expiration of his . . . sentence."  Lostutter is currently serving a period of supervised release and is yet to pay the full amount of his criminal fine and assessment.  (*See* Ex. 1, 3, 4.)  Therefore, to the extent Ky. Rev. Stat. Ann. § 196.045 can even serve as an adequate basis for a § 1983 claim, Lostutter has not yet been impacted by it. Moreover, as discussed above, Lostutter failed to plead that he has applied for a restoration of voting rights, and, in fact, he has not so applied. (Ex. 5 at ¶ 5; Ex. 6 at ¶ 7.)  For this reason as well, Lostutter

---

[7] A copy of Policy Number 27-26-01, including the application, is attached as Ex. A to the Declaration of Johnathan Hall, which itself is Ex. 6.

lacks standing to challenge Ky. Rev. Stat. Ann. § 196.045 because it has not injured him in any way.

C.     **Lostutter lacks standing to challenge Section 145 on any ground that the law was allegedly enacted with discriminatory intent because he is not a racial minority.**

Count One of Lostutter's Second Amended Complaint makes a vague, unsupported, and conclusory statement that "Kentucky Revised Statute § 196.045 is racially discriminatory." (DE 12, ¶ 52.) This legal assertion is insufficient to serve as the basis for a racial-discrimination claim. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (citation omitted)). In any event, Ky. Rev. Stat. Ann. § 196.045 does not interfere with Lostutter's rights under the U.S. Constitution in any way. Therefore, it is not a proper basis for a § 1983 claim. Even assuming that Lostutter pleaded sufficient facts to state a cognizable claim, he lacks standing to pursue such a claim because he is not a racial minority. According to the inmate locator on the Federal Bureau of Prisons website,[8] Lostutter is a thirty-one-year old white male. Nothing in his complaint alleges that Kentucky's laws relating to felon disenfranchisement discriminate against white individuals, so Lostutter lacks standing to pursue any claim based on purported racial discrimination. *See Wesley v. Collins*, 791 F.2d 1255, 1258 (6th Cir. 1986) (holding that a public interest organization did not have standing on the theory that "an injury to the voting rights of blacks results in an injury to the voting rights of all citizens of Tennessee").[9]

II.    **Lostutter fails to state a claim upon which relief can be granted.**

---

[8] Available at: https://www.bop.gov/inmateloc/ (last accessed Nov. 27, 2018).

[9] Lostutter's complaint requests that the Court certify a class, presumably with him as a representative. For these same reasons, Lostutter cannot legally serve as a class representative for any claim based upon purported racial discrimination. *See Richardson v. Ramirez*, 418 U.S. 24, 39 (1974) ("We have held that in the federal system one may not represent a class of which he is not a part . . . .").

A.     **The Supreme Court and Sixth Circuit have held that the Equal Protection Clause of the Fourteenth Amendment permits felon disenfranchisement.**

Lostutter's claim that Kentucky may not disenfranchise felons under the Equal Protection Clause has been squarely rejected by the United States Supreme Court, the Sixth Circuit, and numerous other courts. In fact, the case law is so clear that Lostutter's equal protection claim deserves summary dismissal.

In *Richardson v. Ramirez*, 418 U.S. 24 (1974), the Supreme Court was squarely presented with the question of whether a state may disenfranchise felons. The Court's opinion traced the history of the Fourteenth Amendment and ultimately concluded that the Amendment's explicit language permits a state to disenfranchise felons: "As we have seen, however, the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment." *Id.* at 54. The Court noted that changing the law to permit a felon to retain or to regain the franchise was the exclusive prerogative of state legislators and the citizens they serve. *Id.* at 55. And, the Court specifically held that a state may, "consistent with the Equal Protection Clause of the Fourteenth Amendment, exclude from the franchise convicted felons who have completed their sentences and paroles." *Id.* at 56.

When confronted with a similar argument, the Sixth Circuit correctly followed *Ramirez* without equivocation:

> It is undisputed that a state may constitutionally disenfranchise convicted felons, and that the right of felons to vote is not fundamental. Thus, courts have consistently recognized that states may, pursuant to section 2 of the Fourteenth Amendment, disenfranchise persons convicted of "participation in rebellion, or other crimes."

*Wesley*, 791 F.2d at 1258 (internal citations omitted); *see also Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

As case law clearly establishes, there is no per se violation of the Equal Protection Clause through the disenfranchisement of felons. *See Johnson v. Governor of State of Florida*, 405 F.3d 1214, (11th Cir. 2005) ("A state's decision to permanently disenfranchise convicted felons does not, in itself, constitute an Equal Protection violation."). Therefore, the only *potential* avenue upon which Lostutter may base an equal protection challenge is to prove that Section 145 of the Kentucky Constitution was adopted with a "racially discriminatory intent or purpose" and that the law would not have been adopted without the discriminatory intent or purpose. *Wesley*, 791 F.2d at 1262; *Johnson v. Governor of State of Florida*, 405 F.3d at 1222-23.

Lostutter wholly fails to plead discriminatory intent or purpose behind the enactment of Section 145.[10] "To state a valid claim, a complaint must contain either direct or inferential allegations respecting *all the material elements* to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (emphasis added). "Where a complaint does not state facts sufficient to state a claim, the claims must be dismissed." *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017).

The only conceivable allegation in Lostutter's Second Amended Complaint that Section 145 has a discriminatory *impact* (which is only a factor in determining discriminatory intent) is his averment that "Kentucky's felony disenfranchisement prevents one in every four African-Americans from voting in Kentucky elections." (DE 12 ¶ 29.) Even assuming the truth of this statement, which is made in a vacuum, it cannot establish discriminatory *intent* for purposes of an equal protection challenge because discriminatory intent and its effect are measured at the time the challenged law was enacted. *Johnson v. Governor of State of Florida*, 405 F.3d at 1222 n.17 ("The

---

[10] As discussed in Section I.C., *supra*, Lostutter is not a proper plaintiff to pursue an Equal Protection Clause challenge to Section 145 of the Kentucky Constitution along racial minority lines because he is not a racial minority.

plaintiffs focus on the *present* racially disparate impact of the felon disenfranchisement provision, but this amount of disparate impact was not present in 1968 when the provision was enacted." (emphasis in original)).   Lostutter's Second Amended Complaint contains no allegations whatsoever that Section 145 of the Kentucky Constitution was adopted with discriminatory intent.

Finally, to the extent that Lostutter argues that the Equal Protection Clause (or any other provision of the U.S. Constitution) requires Kentucky to restore a "non-violent felony offender's voting rights," (DE 12 ¶¶ 56, 62, Prayer for Relief ¶¶ 9, 12, 13), such arguments are incorrect as a matter of law.  *See, e.g.*, *Shepherd v. Trevino*, 575 F.2d 1110, 1115 (5th Cir. 1978) (holding that states have a legitimate interest in barring a felon from voting due to their manifestation of a "fundamental antipathy to the criminal laws of the state or of the nation by violation those laws sufficiently important to be classified as felonies").

In short, Lostutter's general claim that Kentucky may not exclude felons from voting pursuant to the Equal Protection Clause has been soundly rejected, regardless of the type of felony committed or whether the felon has served his or her complete sentence.  Moreover, Lostutter has failed to plead facts that would require the Court to engage in any analysis beyond a surface level review of whether Section 145 violates the Equal Protection Clause.  The Commonwealth is entitled to judgment on Lostutter's equal protection claims.

**B.    The First Amendment does not provide any basis for asserting a constitutional challenge in this context.**

Lostutter next challenges Section 145 on First Amendment grounds.  Specifically, Lostutter claims that Kentucky's prohibition on felon voting is an unconstitutional prior restraint or an unconstitutional time, place, and manner restriction.  (DE 12 ¶ 17.)  Regardless of how he couches his claims under the First Amendment, they are wholly without merit.

14

Courts have consistently held that the "First Amendment creates no private right of action for seeking reinstatement of previously cancelled voting rights." *Howard v. Gilmore*, 205 F.3d 1333 (4th Cir. 2000) (unpublished table decision); *Thompson v. Alabama*, 293 F. Supp. 3d 1313, (M.D. Ala. 2017) ("[C]ourts confronted with First Amendment challenges to felon-disenfranchisement laws consistently have rejected such claims."); *Johnson v. Bush*, 214 F. Supp. 2d 1333, 1338 (S.D. Fla. 2002) (holding "that the First Amendment does not guarantee felons the right to vote").[11]  These courts often note the paradox that would exist if the same Constitution that permits felon disenfranchisement under § 2 of the Fourteenth Amendment would prohibit felon disenfranchisement elsewhere, namely the First Amendment.  *See, e.g.*, *Thompson*, 293 F. Supp. 3d at 1327 n.7 (citing *Farrakhan v. Locke*, 987 F. Supp. 1304, 1314 (E.D. Wash. 1997)).

Pursuant to clear authority, the Court should summarily dismiss Lostutter's First Amendment claims as they purport to exist in Counts I, III, and IV of his Second Amended Complaint.

### C.    Kentucky's process to restore a felon's right to vote passes constitutional muster.

Finally, Lostutter claims that Kentucky's process for restoring a felon's right to vote is unconstitutional.  Lostutter's claims are couched in terms of the First Amendment and Fourteenth Amendment and are scattered throughout the four counts of his Second Amended Complaint. Essentially, Lostutter claims that Kentucky's restoration of civil rights process is unconstitutional

---

[11] *Johnson v. Bush* has a lengthy appellate history, but the district court's holding on the First Amendment issue was never impacted.  The district court's decision was affirmed in part, reversed in part on other grounds and remanded by 353 F.3d 1287 (11th Cir. 2003), after which rehearing en banc was granted and the opinion vacated by 377 F.3d 1163 (11th Cir. 2004) (en banc).  On rehearing en banc, the district court's decision was affirmed on other grounds by 405 F.3d 1214 (11th Cir. 2005) (en banc).  The Supreme Court denied certiorari.  546 U.S. 1015 (2005).

because, in his view, it provides the Governor with discretion (as opposed to concrete standards) when deciding whether to restore civil rights and because the process lacks time constraints.  (*See, e.g.*, DE 12 ¶¶ 36, 66, 70, 79, 87, 92.)  Lostutter's arguments mirror those made by disenfranchised felons in *Hand v. Scott*, 285 F. Supp. 3d 1289 (N.D. Fla. 2018), a case decided in Lostutter's favor. The problem for Lostutter, however, is that the district court decision upon which he bases his claims was stayed by a panel of the Eleventh Circuit after it held that the state was likely to prevail on the merits on appeal.  *See Hand v. Scott*, 888 F.3d 1206 (11th Cir. 2018).  As explained by the Eleventh Circuit, Lostutter's claims fail as a matter of law.

### 1.    Lostutter's process claims fail under the Equal Protection Clause.

Like Lostutter, the plaintiffs in *Hand* claimed that the state's "'standardless' voter reenfranchisement regime facially violates the Equal Protection Clause of the Fourteenth Amendment."  *Hand*, 888 F.3d at 1208.  And also like Lostutter, the plaintiffs in *Hand* did not claim that the state actually discriminated against them on the basis of race or other invidious ground, but focused the "heart of their claim" on the premise that "unbounded discretion will yield an unacceptable 'risk' of unlawful discrimination."  *Id.*  The Eleventh Circuit rejected the notion that risk—as opposed to application—could form the basis of a legitimate equal protection claim. *Id.* at 1210 (holding that a risk of discrimination is likely insufficient for a successful equal protection challenge).  Lostutter's process claims are rife with allegations of risk (*see, e.g.*, DE 12 ¶¶ 40, 84), but lack any alleged concrete harm to Lostutter or others.

The Supreme Court has approved of state schemes that provide an executive branch authority with discretion to restore civil rights, including the right to vote.  *See Beacham v.*

*Braterman*, 300 F. Supp. 182 (S.D. Fla. 1969), *aff'd* 396 U.S. 12 (1969).[12]  In *Beacham*, a three-

judge district court panel disposed of the exact question here:

> The succeeding question is whether it is a denial of equal protection of law and due
> process of law for the Governor of Florida, with the approval of three members of
> the Cabinet, to restore discretionarily the right to vote to some felons and not to
> others.  We hold that it is not.  The restoration of civil rights is part of the pardon
> power and as such is an act of executive clemency not subject to judicial control.

*Beachman*, 300 F. Supp. at 184.  Subsequent Supreme Court decisions have likewise recognized

the constitutionally permissible nature of a Governor's discretionary pardon power.  *See Hand*,

888 F.3d at 1209 (discussing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458 (1981), and *Ohio*

*Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1988)). In *Dumschat*, "the Supreme Court held that

a state was entitled to vest the Board of Pardons with 'unfettered discretion' to grant pardons based

on 'purely subjective evaluations . . . by those entrusted with the decision,' leaving inmates with

only a 'unilateral hope' for pardon." *Hand*, 888 F.3d at 1209 (quoting *Dumschat*, 452 U.S. at 464-

66.  In *Woodard*, "the Supreme Court reaffirmed that, because clemency decisions are 'matter[s]

of grace' by which the executive may consider 'a wide range of factors not comprehended by

earlier judicial proceedings and sentencing determinations,' the state could allocate pardons in a

purely discretionary manner without procedural safeguards under the Due Process Clause." *Hand*,

888 F.3d at 1209 (quoting *Woodard*, 523 U.S. at 281).

     These precedents make clear that Section 145 may vest the Governor with full discretion

to restore (or not) the civil rights of felons so long as the system does not have the "purpose and

effect of invidious discrimination." *Hand*, 888 F.3d at 1209.  Just like in *Hand*, the problem for

Lostutter "is that [he has] not shown (nor [has he] even claimed) that [Kentucky's] constitutional

and statutory scheme had as its purpose the intent to discriminate on account of, say, race, national

---

[12] The Supreme Court's decision in *Beacham* was to summarily affirm the district court's decision.  Summary
dispositions are binding precedent.  *Mandel v. Bradley*, 432 U.S. 173, 176 (1977).

origin or some other insular classification . . . .  All we have is the assertion . . . that there is a real

'risk' of disparate treatment and discrimination."  *Id.* at 1210 (brackets and ellipsis added).  This

alleged risk is insufficient to state a claim.

### 2.   Lostutter's process claims fail under the First Amendment.

In *Hand*, the Eleventh Circuit also rejected First Amendment claims that mirror those

brought by Lostutter.  Although block quotations are generally disfavored, the Commonwealth

includes the following because they demonstrate the thoroughness with which the Eleventh Circuit

dispensed of the same claims presented by Lostutter.

> The appellees allege that Florida's felon-reenfranchisement regime facially violates
> the First Amendment because it vests the Executive Clemency Board with
> "unfettered discretion" to engage in a "standard-less process of arbitrary and
> discriminatory decision-making, which is untethered to any laws, rules, standards,
> criteria, or constraints of any kind, and unconstrained by any definite time limits,"
> thereby abridging their right to vote and creating an impermissible risk of
> "arbitrary, biased, and/or discriminatory treatment." The appellees expressly
> disclaim reliance on any anecdotal examples of discrimination and offer nothing
> suggesting that any of them were the victims of viewpoint discrimination, asserting
> that "[f]acial attacks on the discretion granted a decisionmaker are not dependent
> on the facts surrounding any particular permit decision," since "[t]he success of a
> facial challenge on the grounds that an ordinance delegates overly broad discretion
> to the decisionmaker rests not on whether the administrator has exercised his
> discretion in a content-based manner, but whether there is anything in the ordinance
> preventing him from doing so." The appellees, therefore, suggest that "actual
> discrimination need not be proven."

*Hand*, 888 F.3d at 1210-11 (emphasis and alterations in original).  In rejecting these claims, the

Eleventh Circuit wrote:

> Their theory likely fails for at least three reasons. First, our case law establishes that
> the First Amendment affords no greater voting-rights protection beyond that
> already ensured by the Fourteenth Amendment. Because a standardless pardon
> process, without something more, does not violate the Fourteenth Amendment, it
> follows that it does not run afoul of the First Amendment. In the second place,
> Florida's power to disenfranchise voters is expressly sanctioned by § 2 of the
> Fourteenth Amendment. And finally, no First Amendment challenge to a felon-
> disenfranchisement scheme has ever been successful.

*Hand*, 888 F.3d at 1211.  Lostutter did not reinvent the wheel when bringing his claims, and there is no reason for the Court to do so in rejecting them.  The First Amendment does not provide a sufficient legal basis for Lostutter's claims.

**D.    Director Tolley must be dismissed because Lostutter's Second Amended Complaint does not direct any allegations toward her.**

Kentucky Parole Board Director Angela Tolley is mentioned only in the caption and paragraph 14 of the Second Amended Complaint.  As the text of Section 145 of the Kentucky Constitution and Ky. Rev. Stat. Ann. § 196.045 establish, Director Tolley has no responsibility with respect to the disenfranchisement of felons or the potential restoration of a felon's voting rights.  Because Director Tolley has no responsibility with respect to the laws at issue, and because there are no averments made against her in the Second Amended Complaint, she must be dismissed for failure to state a claim.[13]

<u>**CONCLUSION**</u>

Lostutter lacks standing to pursue his claims related to restoration of a felon's voting rights because he has not sought or been denied a pardon or restoration of rights.  As to the merits, courts have uniformly rejected the very claims set forth by Lostutter.  Therefore, Lostutter's Second Amended Complaint should be dismissed.

---

[13] The Kentucky Department of Corrections contains an organizational unit known as the "Division of Probation and Parole."  *See* Ky. Rev. Stat. Ann. § 196.026(3)(a).  The "Application for Restoration of Civil Rights" was created by the Division of Probation and Parole, and a completed application may be mailed back to the division.  The Kentucky Parole Board is an entirely separate organizational unit of state government that is created by Ky. Rev. Stat. Ann. § 439.320.  The board is not responsible for the application.  Regardless, neither the department, division, nor board are necessary parties to this action.

Respectfully submitted,


/s/ Kristin L. Wehking
Kristin L. Wehking
Office of Legal Services
Justice and Public Safety Cabinet
125 Holmes Street
Frankfort, Kentucky 40601
(502) 564-7554
Kristenl.wehking@ky.gov

*Counsel for Defendant*
*Commonwealth of Kentucky*