# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION AT LONDON

STEPHON DONÉ HARBIN,   )
ROBERT CALVIN LANGDON,  )
RICHARD LEROY PETRO, JR., )
BONIFACIO R. ALEMAN,   )
MARGARET STERNE, BRYAN  )
LAMAR COMER, ROGER    )
WAYNE FOX II, DERIC JAMES  )
LOSTUTTER,          )
                )
    *Plaintiffs,*    )
                )  **Civil No. 6:18-cv-277-KKC**
  v.          )
                )  **FOURTH AMENDED**
MATT BEVIN, in his official  )  **COMPLAINT FOR**
Capacity as Governor of Kentucky, )  **DECLARATORY AND**
                )  **INJUNCTIVE RELIEF**
    *Defendant.*   )
_____)

## FOURTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Stephon Doné Harbin, Robert Calvin Langdon, Richard Leroy Petro, Jr., Bonifacio R. Aleman, Margaret Sterne, Bryan LaMar Comer, Roger Wayne Fox II, and Deric James Lostutter (collectively, "Plaintiffs") seek declaratory and injunctive relief and allege as follows:

## NATURE OF ACTION

1. This case is about the exercise of the fundamental right at the heart of America's democratic system of self-government and the exercise of arbitrary

governmental control over that right.  Kentucky is one of just three states that deny

the right to vote to *all* convicted felons until they successfully petition for the

restoration of their civil rights.  Iowa and Virginia are the only other states that

consign the voting rights of *all* felons to the unfettered discretion of public

officials.[1]   Under Kentucky law, the Governor has the sole and unconstrained

---

[1] IOWA CODE § 914.2 (executive restoration for all felony convictions); KY. CONST.
§ 145 (executive restoration for all felony convictions); VA. CONST. art. II, § 1
(executive restoration for all felony convictions).  Florida's voters approved Ballot
Question 4 in the November 2018 general election, which amended the state's
Constitution and, as of its effective date on January 8, 2019, restores the right to
vote to all felons, excluding those convicted of murder or sex offenses, who have
completed all terms of their sentence.  *See* Fla. Dept. of State, Voting Restoration
Amendment,                                                                    14-01,
https://dos.elections.myflorida.com/initiatives/initdetail.asp?account=64388&seqn
um=1 (last visited Dec. 4, 2018), full text of Amendment 4 *available at*
https://dos.elections.myflorida.com/initiatives/fulltext/pdf/64388-1.pdf.  Virginia is
technically included on this list.   Though its state laws still create a purely
discretionary restoration scheme, Virginia's current gubernatorial administration is
restoring the voting rights of felons who have completed their sentences including
parole and probation.  Secretary of the Commonwealth's Website, Restoration of
Rights, *available at* https://www.restore.virginia.gov (last visited Dec. 21, 2018).
In just seven other states, some but not all felons, *e.g.* those convicted of certain
felonies or multiple felonies, continue to be disenfranchised following the
completion of their sentences and must petition a court or state officials to regain
their voting rights.   *See, e.g.*, Ala. Code §§ 15-22-36, 15-22-36.1 (non-
discretionary executive restoration for certain felony convictions upon satisfaction
of objective criteria, but permanent disenfranchisement for murder, treason and
various sex offenses); Ariz. Rev. Stat. Ann. §§ 13-905–13-912 (discretionary
judicial restoration for individuals with two or more felony convictions, but
automatic restoration for first-time offenders); Del. Code Ann. tit. 15, §§ 6103,
6104 (automatic restoration except permanent disenfranchisement for certain
disqualifying felony convictions); Miss. Const., art. 12, § 241 (listing ten crimes
that trigger lifelong disenfranchisement); *Cotton v. Fordice*, 157 F.3d 388 (5th Cir.
1998) (interpreting section 241 of the Mississippi Constitution to include certain

power to grant or deny felons' applications for restoration of their civil rights, which includes the right to vote.[2]  There are no laws, rules, or criteria regulating the Governor's decisions to grant or deny restoration applications and, as such, the scheme runs afoul of the First Amendment to the U.S. Constitution.  This action challenges Kentucky's arbitrary voting rights restoration scheme for felons.  It does not challenge Kentucky's authority to disenfranchise felons upon conviction. Nor does it challenge Kentucky's system for restoring any other civil right beyond the right to vote.

---

felonies not expressly listed); *see also* Op. Atty. Gen. No. 2009-00210, 2009 WL 2517257 (Miss. A.G. July 9, 2009) (interpreting section 241 in light of *Cotton* to mean 22 felonies currently trigger lifelong disenfranchisement in Mississippi); NEV. REV. STAT. § 213.157 *as amended by* 2017 Nevada Laws Ch. 362 (A.B. 181) (discretionary judicial restoration for individuals with multiple felony convictions, if previously convicted for more serious, violent offenses and/or two or more offenses; otherwise, automatic restoration immediately upon release or following two-year waiting period for Category B felonies); Wyo. Stat. Ann. § 7-13-105 (amended by 2018 Wyo. Laws Ch. 108 (S.F. 70), 64th Leg., Budget Sess. (Wyo. 2018)) (discretionary executive restoration for all felony convictions but automatic restoration for non-violent first-time felony convictions).  All other states restore voting rights to felons upon release from incarceration, the end of parole, probation, or a two-year waiting period, or do not disenfranchise felons even during incarceration.  Christopher Uggen, Ryan Larson and Sarah Shannon, 6 MILLION LOST VOTERS: STATE-LEVEL ESTIMATES OF FELONY DISENFRANCHISEMENT, The Sentencing Project (2016) ("SENTENCING PROJECT REPORT"), at 4, *available at* https://www.sentencingproject.org/publications/6-million-lost-voters-state-level-estimates-felony-disenfranchisement-2016/ (last visited Dec. 27, 2018).

[2] While Kentucky state law includes additional rights within civil rights restoration, Ky. Rev. Stat. § 196.045(3), this challenge focuses exclusively on the right to vote.

2.     Disenfranchised felons who have completed their full sentences and seek to regain their voting rights in Kentucky must submit an application to the Department of Corrections Division of Probation and Parole ("the Department of Corrections").  The application asks only for objective and verifiable information such as whether the applicant has ever been convicted of certain offenses and whether the applicant currently has any outstanding warrants or pending charges or indictments.[3]  On information and belief, the Department of Corrections screens the applications and forwards eligible applicants' paperwork to the Governor's office.  The decision whether to grant or deny a felon's restoration application rests with the Governor's unfettered discretion.  Applicants may be granted or denied for any reason.  The absence of objective, transparent legal rules or criteria for restoration opens the door to political, viewpoint, racial, religious, wealth, and any other type of discrimination.

3.     An unbroken, 80-year-old, and well-settled line of Supreme Court precedent prohibits the arbitrary licensing of First Amendment-protected conduct.  This is because the risk of viewpoint discrimination is highest when a government official's discretion to authorize or prohibit First Amendment-protected activity is entirely unconstrained by law.  Officials with unfettered authority to selectively

---

[3] Ky. Dep't of Corrections, Division of Probation and Parole, Application for Restoration of Civil Rights, *available at* https://corrections.ky.gov/Probation-and-Parole/Documents/Civil%20Rights%20Application%20Rev%2011-25-2015.pdf.

permit felons to vote may grant or deny restoration applications on pretextual grounds while secretly basing their decision on information or speculation as to the applicant's political affiliation or views, the applicant's race, faith, wealth, or other characteristics.   This is why conditioning the enjoyment of a fundamental constitutional right on the exercise of unfettered official discretion and arbitrary decision-making violates the First Amendment to the United States Constitution.

4.     Additionally, no laws, rules or regulations set any reasonable, definite time limits on the Governor to act on a felon's application for restoration of civil rights in Kentucky.   Indeed, on information and belief, in his time in office, Defendant Governor Matt Bevin has not denied any restoration application outright and has instead decided to keep certain restoration applications in an indefinite pending status.   This delay is compounded by the backlog of applications.   As of March of this year, there was a reported backlog of 1,459 restoration of civil rights applications.   Ky. Op. Atty. Gen. 18-ORD-056, *1 n.1 (Mar. 14, 2018).   The lack of a reasonable, definite time limit for making a final decision on a felon's application for restoration of voting rights also violates the First Amendment.

5.     When Governor Bevin took office in December 2015, he rescinded an executive order issued by his predecessor that created a process for non-discretionary restoration for certain felons and, in his unbridled discretion, did not grant any restoration applications in his first fifteen months in office.   On

information and belief, Governor Bevin was the first governor in over two decades not to grant restoration to a single person in their first year in office.[4]   Since that time, on information and belief, Governor Bevin has granted just 980 restoration of civil rights applications.   The disenfranchised population in Kentucky remains one of the largest nationwide.   As of 2016, when the Sentencing Project released its study, Kentucky had an estimated 242,987 felons who are still disenfranchised after completing their full sentences including parole and probation or 7 percent of the state's voting-age population.   Today, this is the second highest rate in the nation.[5]

6.    Plaintiffs bring this action under 42 U.S.C. § 1983 against Defendants' unlawful deprivation of Plaintiffs' rights under the First Amendment to the United States Constitution.

7.    Plaintiffs Stephon Doné Harbin, Robert Calvin Langdon, Richard Leroy Petro, Jr., Bonifacio R. Aleman, Margaret Sterne, Bryan LaMar Comer, Roger Wayne Fox II, and Deric James Lostutter are all disenfranchised felons.  Mr. Harbin, Mr. Langdon, and Mr. Petro have applied for restoration of their right to vote, and their applications are currently pending with the Governor.  Mr. Aleman, Ms. Sterne, and Mr. Comer have finished their full sentences but not yet applied

---

[4] *Voting Rights Restored to a Very Few*, LEXINGTON HERALD (Apr. 2017), https://www.kentucky.com/opinion/editorials/article143208169.html.
[5] SENTENCING PROJECT REPORT, *supra* n.1, at Table 3.

for restoration of their right to vote.  Mr. Fox will complete his sentence and be eligible to apply under Ky. Rev. Stat. § 196.045 on or before March 30, 2019 and during the pendency of this litigation.  Mr. Fox has not yet applied for the restoration of his voting rights.  And Mr. Lostutter is on probation until 2021 and has not yet applied for restoration of his voting rights.  Even though Mr. Fox and Mr. Lostutter are not presently eligible to apply for restoration under the current scheme, insofar as Kentucky law fails to set forth any objective, neutral rules and criteria governing felon voting rights restoration, they are nevertheless subjected to an arbitrary voting rights restoration scheme.

8.     All Plaintiffs want their voting rights restored so they can register and vote in future primary and general elections in Kentucky for candidates of their choice and ballot initiatives, and to support and associate with political parties in order to advance the parties' goals.

## JURSIDICTION AND VENUE

9.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this case arises under the United States Constitution and seeks equitable and other relief for the deprivation of constitutional rights under color of state law.

10.     This Court has jurisdiction to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

11.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     This Court has personal jurisdiction over Defendant Matt Bevin, the Governor of Kentucky, who is sued in his official capacity.  Defendant Governor Bevin is an elected state government official who works in Frankfort, Kentucky.

13.     Venue is appropriate in the Eastern District of Kentucky, under 28 U.S.C. § 1391(b)(1), because Governor Bevin is a state official working in Frankfort, Kentucky.  A substantial part of the events giving rise to these claims occurred and will continue to occur in this district, making venue also proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

14.     Plaintiff Stephon Doné Harbin is a United States citizen, 47 years old, and a resident of Louisville, Kentucky.  Mr. Harbin was convicted of at least one felony in Kentucky state court and lost his right to vote under Kentucky law.  After spending ten years in prison, Mr. Harbin was released in 2003 and completed his sentence in July 2017.  Mr. Harbin first applied for restoration of his right to vote soon after he completed his sentence.  His first application was rejected on the basis that it was not witnessed by a notary public or his parole officer.  Mr. Harbin had his application signed by his parole officer and then resubmitted it in late December 2017.  After waiting approximately four months, in April 2018, he

received a letter informing him that he still had a traffic citation pending and that he would need to submit proof that he paid the fine.  Mr. Harbin had already paid the fine, and the Application for Restoration of Civil Rights does not require proof of payment of all fines for civil infractions.  Nevertheless, Mr. Harbin went to the Kentucky Court of Justice Traffic Division in downtown Louisville and obtained a copy of the disposition of his speeding citation, which reflected that he had previously paid the fine.  Mr. Harbin submitted his application for the third time, and it remains pending.  Since then, he has not received any correspondence from the Governor's office, the Secretary of State's office, or the Department of Corrections.

15.    Plaintiff Robert Calvin Langdon is a United States citizen, 43 years old, and a resident of Mount Washington, Kentucky.  Mr. Langdon was convicted of a least one felony in Kentucky state court and lost his right to vote under Kentucky law.  He finished his complete sentence including parole and probation in 2014 and, in 2016, submitted an application for restoration of his right to vote.  At some point, Mr. Langdon spoke on the phone with a representative from the Governor's office, who informed him that his pending application would never be approved by the Governor, given the nature of his offense, second-degree assault.  His application has never been granted and never been formally denied.

16.     Plaintiff Richard Leroy Petro, Jr. is a United States citizen, 65 years old, and a resident of Murray, Kentucky.  Mr. Petro was convicted of at least one felony in federal court and lost his right to vote under Kentucky law.  After spending 12 years in prison, Mr. Petro was released in 1992 and completed his sentence in 1995.  While on probation and after completing his sentence, Mr. Petro lawfully voted in elections as a resident of Indiana.  He has not voted since moving to Kentucky.  Last year, Mr. Petro applied for restoration of his voting rights. After 13 weeks, he called the Department of Corrections and was told to call the Governor's office.  When he called the Governor's office (twice), he was told that the application is "on the Governor's desk.  Whenever he gets around to reviewing it, he'll make a decision."  Mr. Petro's application remains pending.  Since then, he has not received any correspondence from the Governor's office, the Secretary of State's office, or the Department of Corrections.

17.     Plaintiff Bonifacio R. Aleman is a United States citizen, 40 years old, and a resident of Louisville, Kentucky.  Mr. Aleman was convicted of at least one felony in Kentucky state court and lost his right to vote under Kentucky law.  After spending eleven years in prison, Mr. Aleman was released in 2008 and completed his sentence in 2010.

18.     Plaintiff Margaret Sterne is a United States citizen, 64 years old, and a resident of Murray, Kentucky.  In 1974, Ms. Sterne was convicted of at least one

felony in Ohio state court.  Ms. Sterne was not incarcerated and served her full two-year sentence on probation.  In Ohio, Ms. Sterne never lost her civil rights, including the right to vote, because Ohio law only deprives felons of their right to vote during incarceration.  Now a resident of Kentucky, she must seek the Governor's approval in order to vote.

19.    Plaintiff Bryan LaMar Comer is a United States citizen, 37 years old, and a resident of Louisville, Kentucky.  Mr. Comer was convicted of at least one felony in Kentucky state court in February 2002 and lost his right to vote under Kentucky law.  He served out his full sentence on supervised release, with no incarceration and no further parole or probation following his February 2002 conviction pursuant to a plea agreement.

20.    Plaintiff Roger Wayne Fox II is a United States citizen, 34 years old, and a resident of Stanford, Kentucky.  Mr. Fox pled guilty to at least one felony in Kentucky state court and lost his right to vote under Kentucky law.  He expects to complete his sentence by no later than March 30, 2019.

21.    Plaintiff Deric James Lostutter is a United States citizen, 31 years old, and a resident of Manchester, Kentucky.  Mr. Lostutter was convicted of at least one felony in federal court and lost his right to vote under Kentucky law.  In September 2018, he was released from prison and given three years of probation.

11

22.     Plaintiffs want to register and vote in future primary and general elections in the Commonwealth of Kentucky for candidates of their choice and state constitutional amendments, and to support and associate with political parties in order to advance those political parties' goals.

23.     Defendant Matt Bevin is the Governor of Kentucky and is sued in his official capacity.   The Kentucky Constitution vests the Governor with the exclusive authority to restore civil rights.

## BACKGROUND

### A. Felon Disenfranchisement and Reenfranchisement in Kentucky

24.     Section 145 of the Kentucky Constitution sets forth the rules for voting eligibility and also includes a felon disenfranchisement provision:

> 1. Persons convicted in any court of competent jurisdiction of treason, or felony, or bribery in an election, or of such high misdemeanor as the General Assembly may declare shall operate as an exclusion from the right of suffrage, but persons hereby excluded may be restored to their civil rights by executive pardon.

> 2. Persons who, at the time of the election, are in confinement under the judgment of a court for some penal offense.

KY. CONST. § 145.  This disenfranchisement provision is incorporated within the Kentucky election code's voting eligibility provision.  Ky. Rev. Stat. § 116.025. Felons may not register to vote prior to being granted restoration of their civil rights pursuant to Section 145 of the Constitution.  Registering to vote as an

ineligible, unrestored felon is a Class D felony, punishable by up to five years in prison.  Ky. Rev. Stat. §§ 119.025, 532.020(1)(a).

25.   As the restoration of civil rights application form puts it, "[i]t is the prerogative of the Governor afforded him or her under the Kentucky Constitution to restore these rights."[6]   There are no specific and uniform rules or criteria governing the Governor's decisions to grant or deny voting rights restoration applications, just the unfettered discretion of a single public official.

26.   According to legislation enacted in 2001, Kentucky state law charges the Department of Corrections with creating a "simplified process" for the restoration of civil rights, including: informing eligible felons about the restoration process; creating a standard application form; generating a list of eligible felons who have been released from incarceration or discharged by the Parole Board and who have requested restoration; conducting an investigation to verify that an applicant has paid all restitution and that there are no outstanding warrants, charges, or indictments; and "[f]orward[ing] information on a monthly basis of eligible felony offenders who have requested restoration of rights to the Office of the Governor for consideration of a partial pardon."  Ky. Rev. Stat. § 196.045(1). An application for restoration of civil rights may be submitted to the Department of

---

[6] Ky. Dep't of Correction, Division of Probation and Parole, Application for Restoration of Civil Rights, *available at* https://corrections.ky.gov/Probation-and-Parole/Documents/Civil%20Rights%20Application%20Rev%2011-25-2015.pdf.

Corrections' Division of Probation and Parole and is made available on the Department's website.[7]

27.     Felons are eligible to apply for restoration of their civil rights, including the right to vote, once they have received their final discharges or their sentences have expired.  Ky. Rev. Stat. § 196.045(2)(a).  Additionally, applicants must not be under felony indictment, have pending warrants, charges, or indictments, or owe any outstanding restitution as ordered by the Court or the Parole Board.  Ky. Rev. Stat. § 196.045(2)(b).

28.     Applicants must provide their name, address, phone number, date of birth, and Social Security Number.  They must then list all their "current crimes," a vague term that may mean crimes for which the sentence is not yet completed, their most recent felony convictions, and all previous felony convictions.  For each crime listed, the applicants must include the length of their sentences, the county of conviction, the estimated date of conviction, the institution or jail from which they were released, and the date of final discharge.  For each federal or out-of-state felony conviction, the applicant must provide a copy of the conviction or judgment of final sentence, verification of final discharge or sentence expiration, and verification that any ordered restitution has been paid in full.  Applicants must next answer a series of questions regarding whether they have ever been convicted of: a

---

[7] *Id.*

federal crime, a violent offense, assault, a sexual offense, treason, or bribery.  They must further state whether they have any outstanding warrants, pending charges or indictments, or any unpaid fines or fees.  The form must be signed by both the applicant and either a notary public or the applicant's probation or parole officer.[8]

29.    Restoration of civil rights applications that meet the eligibility criteria are then referred to the Governor's office for a decision.  Kentucky law authorizes the Governor to request that the Parole Board investigate and report with respect to any restoration application.  Ky. Rev. Stat. § 439.450.  On information and belief, it has been Governor Bevin's practice to grant some applications in batches twice a year, once on July 4th and again at year's end around Christmas.

30.    On information and belief, the Governor's office sends signed executive orders to the Secretary of State's office.  The Secretary of State signs the restoration order as well, adds a certificate and seal, enters information into a database and then sends the restoration order and certificate back to the Governor's office.  The Governor's office then sends the signed and sealed executive orders with certificates to the Department of Corrections, and the Department of Corrections completes the process by sending the executive order, certificate, and voter registration card or voter registration information to the restored felon.

---

[8] *Id.*

31.     Former Governor Steve Beshear issued Executive Order 2015-871 on November 24, 2015, thereby creating a process of non-discretionary restoration for certain qualifying felons.  EO 2015-871 ordered the restoration of the right to vote and the right to hold public office only to felons convicted under Kentucky state law who had completed their full sentences including parole and probation, paid all restitution, and had no pending criminal cases, charges or arrests, with exceptions for certain violent crimes, treason, and bribery.  The Department of Corrections was directed to issue and deliver Certificates of Restoration of Civil Rights to felons who met the specified criteria:

> Any offender who has received a final discharge prior to the effective date of this Order shall be eligible for a Certificate from the Department of Corrections upon application to and confirmation by the Department of Corrections that he or she meets all of the criteria for automatic restoration of civil rights as set forth herein.

Federal felons and those not meeting the criteria for automatic restoration were directed to submit an application according to the regular discretionary restoration process.  The Executive Order underscored that the restoration it was effecting was not to be "construed as a pardon" and, accordingly, it would "not operate as a bar to greater penalties for second offenses or a subsequent conviction as a habitual

criminal." Finally, the Executive Order took immediate effect and had prospective and retroactive application.[9]

32.   Governor Beshear's Executive Order was not long-lived.   When Governor Bevin took office the following month, he quickly rescinded the previous executive order, citing his belief that non-discretionary restoration "must come through an amendment to the Kentucky Constitution and not by executive action." Issued on December 22, 2015, Executive Order No. 2015-052 suspended Governor Beshear's executive order, but left untouched any restorations granted pursuant to Executive Order 2015-871 prior to its suspension.[10]   Nevertheless, the current restoration application available on the Kentucky Department of Corrections website oddly suggests to the applicant that rescinded Executive Order 2015-871 is still in effect.[11]

### B. Effect of the Current Restoration of Civil Rights Process in Kentucky

33.   Restoration of civil rights grants have declined steeply since Governor Bevin assumed office in December 2015.   Former Governor Beshear restored

---

[9]   Ky. Exec. Order No. 2015-871 (Nov. 24, 2015), *available at* http://apps.sos.ky.gov/Executive/Journal/execjournalimages/2015-MISC-2015-0871-242277.pdf.

[10]   Ky. Exec. Order No. 2015-052 (Dec. 22, 2015), *available at* http://apps.sos.ky.gov/Executive/Journal/execjournalimages/2016-MISC-2015-0052-243103.pdf.

[11] *See supra* n.7.

17

voting rights to more than 9,500 citizens during his eight-year tenure.[12]   In Governor Bevin's first fifteen months in office, he restored zero people to their civil rights.  Since the first restorations Governor Bevin granted in April 2017, the total number of restorations has risen to 980.  Had Governor Bevin not rescinded his predecessor's order granting non-discretionary restoration for certain felons in the state, this figure would have been significantly higher.

34.    On information and belief, as of March of this year, there were reportedly 1,459 completed restoration of civil rights applications pending with no decision.  Ky. Op. Atty. Gen. 18-ORD-056, at *1 n.1 (Mar. 14, 2018).  It is unknown how many restoration applications are pending as of this filing.  The Governor's office has stated that it is not required to track the number of pending applications.  *Id.* at *2.

35.    On information and belief, Governor Bevin does not deny any applications for restoration of civil rights.  Instead, certain applications are indefinitely held in limbo by the Governor's office, without any final decision.

36.    Kentucky's disenfranchised population is estimated at more than 312,046 felons, an estimated 242,987 of whom have already completed their full

---

[12] League of Women Voters of Kentucky, FELONY DISENFRANCHISEMENT IN THE COMMONWEALTH OF KENTUCKY, (Feb. 2017), https://lwvky.files.wordpress.com/2017/02/kentucky-felony-disenfranchisement-report-feb-17-final-docx.pdf.

sentences including parole and probation.[13]   This ranks among the very largest state populations of disenfranchised.[14]   9.14 percent of Kentucky's voting-age population cannot vote due to a felony conviction, now the second highest percentage in the nation after Mississippi.[15]

37.     The restoration of the right to vote for these disenfranchised former felons rests with the unfettered discretion of Governor Bevin.

38.     Not only is the standard-less process prone to arbitrary and discriminatory treatment, but the Governor actually does make decisions in a wholly arbitrary manner.   These decisions turn on Governor Bevin's pure whim and discretion.

## CLAIMS

### COUNT ONE
### (All Plaintiffs)
### (Unfettered Discretion and Arbitrary Treatment in Violation of First Amendment to the U.S. Constitution and 42 U.S.C. § 1983)

39.     The factual allegations contained in the preceding paragraphs are incorporated into Count One, as though fully set forth herein.

---

[13] *See supra* n.5.

[14] *Id*.

[15] *Id*.   Florida passed Ballot Question 4, amending the Florida Constitution to restore the voting rights of felons who have completed the terms of their sentences, including parole and probation, with the exception of those convicted of murder or sex offenses.   Therefore, it no longer has the highest percentage of disenfranchised felons in the country.   *See supra* n.1.

40.     Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of the First Amendment to the U.S. Constitution.

41.     The First Amendment provides that: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. amend. I, § 1.

42.     The First Amendment protects the right to vote because voting is both political association and political expression or expressive conduct.  *Doe v. Reed*, 561 U.S. 186, 195-96 & n.1 (2010); *id*. at 224 (Scalia, J., concurring) ("We have acknowledged the existence of a First Amendment interest in voting . . .") (citing *Burdick v. Takushi*, 504 U.S. 428 (1992)); *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000); *Norman v. Reed*, 502 U.S. 279, 288-90 (1992); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214-17 (1986); *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 199 (1986); *Anderson v. Celebrezze*, 460 U.S. 780, 787-89 (1983); *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *Storer v. Brown*, 415 U.S. 724, 728-29 (1974); *Kusper v. Pontikes*, 414 U.S. 51, 56-58 (1973); *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968).

43.     The First Amendment forbids vesting government officials with unfettered discretion to issue or deny licenses or permits to engage in any First

20

Amendment-protected speech, expressive conduct, association or any other protected activity or conduct. *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130-33 (1992) ("The First Amendment prohibits the vesting of such unbridled discretion in a government official."); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763-64 (1988) ("[A] law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official."); *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 150-53 (1969) (invalidating permit scheme for marches or demonstrations that lacked "narrow, objective, and definite standards" and was "guided only by [Commissioners'] own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience'"); *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958) ("It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."); *Saia v. People of State of New York*, 334 U.S. 558, 560-62 (1948) (striking down discretionary permit scheme for use of loud-speakers) ("Annoyance

at ideas can be cloaked in annoyance at sound.").  Absent any legal constraints, rules, or criteria regulating the granting or denying of restoration of voting rights applications, the process is highly susceptible to arbitrary, biased, and/or discriminatory decision-making.

44.    The Governor of the Commonwealth of Kentucky is vested with the authority to deny or grant applications for the restoration of civil rights, and discretion in issuing these licenses to vote is absolute.  Voting rights restoration is not governed by any laws, rules, or criteria of any kind.  This scheme therefore constitutes an unconstitutional arbitrary licensing scheme regulating the exercise of the right to vote.

45.    First Amendment doctrine does not require plaintiffs to demonstrate actual evidence of discriminatory treatment.  The risk of such discriminatory treatment in the absence of any legal constraints is sufficient.  *Forsyth Cty.*, 505 U.S. at 133 n.10; *City of Lakewood*, 486 U.S. at 769-70.

46.    Ky. Const. § 145, Ky. Rev. Stat. § 116.025, and Ky. Rev. Stat. § 196.045 require that a felon obtain the Governor's permission in order to regain his or her right to vote, and therefore impose an unconstitutional arbitrary licensing scheme for First Amendment-protected voting.  Kentucky state law and administrative rules and procedures contain no constraints on and no rules or criteria for the Governor's discretionary power to grant or deny applications for the

restoration of voting rights, making the system prone to arbitrary, biased, and/or discriminatory treatment.  As a licensing scheme of unfettered official discretion, it violates the First Amendment to the U.S. Constitution.

47.    At all relevant times, Defendant has acted under color of state law.

48.    Defendant has deprived and will continue to deprive Plaintiffs of their right to be free from an unconstitutional arbitrary licensing scheme governing their right to vote.  This right is guaranteed to Plaintiffs by the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT TWO**
**(All Plaintiffs)**
**(Lack of Reasonable, Definite Time Limits for Decisions on Voting Rights Restoration Applications in Violation of the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983)**

49.    The factual allegations contained in the preceding paragraphs are incorporated into Count Two, as though fully set forth herein.

50.    Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of the First Amendment to the U.S. Constitution.

51.    The First Amendment provides that: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. amend. I, § 1.

52.   The First Amendment protects the right to vote because voting is both political association and political expression or expressive conduct. *Doe v. Reed*, 561 U.S. 186, 195-96 & n.1 (2010); *id*. at 224 (Scalia, J., concurring) ("We have acknowledged the existence of a First Amendment interest in voting . . .") (citing *Burdick v. Takushi*, 504 U.S. 428 (1992)); *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000); *Norman v. Reed*, 502 U.S. 279, 288-90 (1992); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214-17 (1986); *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 199 (1986); *Anderson v. Celebrezze*, 460 U.S. 780, 787-89 (1983); *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *Storer v. Brown*, 415 U.S. 724, 728-29 (1974); *Kusper v. Pontikes*, 414 U.S. 51, 56-58 (1973); *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968).

53.   First Amendment doctrine clearly holds that an administrative licensing scheme "that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990).   "Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *Id*. at 227; *see also Riley v. Nat'l Fed'n of the Blind of North Carolina,*

24

*Inc.*, 487 U.S. 781, 802 (1988) ("[D]elay compels the speaker's silence. Under these circumstances, the licensing provision cannot stand."). Without reasonable, definite time limits, there is also a significant risk of arbitrary, biased, and/or discriminatory treatment of restoration of voting rights applications.

54. The Governor is not bound by any reasonable, definite time limits in processing applications for the restoration of voting rights and issuing final decisions. Kentucky state law and regulations are devoid of any such time limits for granting or denying applications for the restoration of their right to vote.

55. As of March of this year, there was a reported backlog of 1,459 completed restoration of civil rights applications. Ky. Op. Atty. Gen. 18-ORD-056, *1 n.1 (Mar. 14, 2018). Without time limits, the Governor's office may process individual restoration applications at their own chosen speed and may deliberately fast-track select applicants while delaying others.

56. Since no provision in Kentucky state law or regulations requires the Governor's office to process and adjudicate an application for restoration of civil rights within a reasonable, definite time period, Ky. Const. § 145, Ky. Rev. Stat. § 116.025, and Ky. Rev. Stat. § 196.045 create the risk of arbitrary delays and arbitrary continued disenfranchisement and therefore violate the First Amendment.

57. Ky. Const. § 145, Ky. Rev. Stat. § 116.025, and Ky. Rev. Stat. § 196.045 impose an unconstitutional arbitrary licensing scheme for First

Amendment-protected voting.   Kentucky state law and administrative rules and procedures contain no reasonable, definite time constraints on the Governor's processing of and decisions regarding applications for the restoration of voting rights, making the system susceptible to arbitrary, biased, and/or discriminatory treatment.   As a scheme of unfettered official discretion with no reasonable, definite time limits, Kentucky's voting rights restoration process violates the First Amendment to the U.S. Constitution.

58.     At all relevant times, Defendant has acted under color of state law.

59.     Defendant has deprived and will continue to deprive Plaintiffs of their right to a felon voting rights restoration scheme with definite time limits on the Governor's decision-making, which is guaranteed to Plaintiffs by the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

(a) Assume jurisdiction over this matter;

(b) Declare that Kentucky's arbitrary voting rights restoration scheme for felons enshrined in Ky. Const. § 145, Ky. Rev. Stat. § 116.025, and Ky. Rev. Stat. § 196.045 violates the First Amendment to the United States Constitution as to the right to vote;

26

(c) Issue a permanent injunction, enjoining Defendant Governor Bevin, his respective agents, officers, employees, successors, and all persons acting in concert with him from subjecting Plaintiffs' right to vote to the unconstitutional arbitrary voting rights restoration scheme in Ky. Const. § 145, Ky. Rev. Stat. § 116.025, and Ky. Rev. Stat. § 196.045;

(d) Issue a permanent injunction, ordering Defendant Governor Bevin, his respective agents, officers, employees, successors, and all persons acting in concert with him, to replace the current arbitrary voting rights restoration scheme for felons with a non-arbitrary voting rights restoration scheme which restores the right to vote to felons based upon specific, neutral, objective, and uniform rules and/or criteria;

(e) Retain jurisdiction to enforce its order;

(f) Grant Plaintiffs their reasonable attorneys' fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law; and

(g) Grant such other relief as this Court deems just and proper.

DATED: February 4, 2019                         Respectfully submitted,

                                                /s/ Jon Sherman

                                                Jon Sherman*
                                                D.C. Bar No. 998271
                                                Michelle Kanter Cohen*
                                                D.C. Bar No. 989164

27

Massachusetts Bar No. 672792 (inactive)
Fair Elections Center
1825 K St. NW, Suite 450
Washington, DC 20006
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
Phone: (202) 331-0114

Ben Carter
Kentucky Bar No. 91352
Kentucky Equal Justice Center
222 South First Street, Ste. 305
Louisville, KY 40202
ben@kyequaljustice.org
Phone: (502) 303-4062

*Counsel for Plaintiffs*

*Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Plaintiff's Fourth Amended Complaint was served upon the following parties via the CM/ECF system on February 4, 2019:

M. Stephen Pitt
S. Chad Meredith
Matthew F. Kuhn
Barry L. Dunn
Office of the Governor
700 Capitol Avenue, Suite 101
Frankfort, Kentucky 40601
Steve.Pitt@ky.gov
Chad.Meredith@ky.gov
Matt.Kuhn@ky.gov
Barry.Dunn@education.ky.gov

Kristin L. Wehking
Office of Legal Services
Justice and Public Safety Cabinet
125 Holmes Street
Frankfort, KY 40601
(502) 564-7554
Kristenl.wehking@ky.gov

<u>/s/ Jon Sherman</u>

February 4, 2019