UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DERIC LOSTUTTER, *et al.*, | CIVIL ACTION NO. 6:18-277-KKC |
| Plaintiffs, | |
| V. | OPINION AND ORDER |
| ANDY BESHEAR, in his official capacity as Governor of the Commonwealth of Kentucky, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for summary judgment. Plaintiffs are Kentuckians who lost their right to vote because of felony convictions. They filed this suit against, *inter alia*, former Kentucky Governor Matt Bevin, seeking declaratory and injunctive relief. After considering the governor's motion to dismiss, the Court determined that the remaining issues warranted resolution on summary judgment.

Kentucky's constitution deprives convicted felons of the right to vote, but also permits the Governor of the Commonwealth to restore that right. When the complaint was filed, and when it was subsequently amended, Matt Bevin was governor, and there were no restrictions on his discretion to grant or deny requests for reinstatement of the franchise. Plaintiffs assert that the lack of criteria guiding felon re-enfranchisement in Kentucky renders the process arbitrary and, therefore, unconstitutional.

1

While this litigation was pending, Andy Beshear was elected governor.[1] Upon taking office in December, 2019, Governor Beshear issued an executive order that automatically restores the right to vote to Kentuckians convicted of certain, state-law felonies who have served their sentences. By establishing non-arbitrary criteria for the restoration of voting rights, Governor Beshear has remedied the harm asserted in the operative complaint. Accordingly, Plaintiffs' claims are dismissed as moot.

## Background

Section 2 of the Fourteenth Amendment empowers states to "disenfranchise persons convicted of 'participation in rebellion, or other crimes.'" *Wesley v. Collins*, 791 F.2d 1255, 1261 (6th Cir. 1986) (collecting cases citing Section 2). The Supreme Court has interpreted this provision as an "affirmative sanction" to exclude felons from voting. *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974). Kentucky both disenfranchises felons and provides an avenue for felon re-enfranchisement. Pursuant to Section 145 of the state constitution –

> Persons convicted in any court of competent jurisdiction of treason, or felony, or bribery in an election, or of such high misdemeanor as the General Assembly may declare shall operate as an exclusion from the right of suffrage, but persons hereby excluded may be restored to their civil rights by executive pardon.

Under Kentucky law, the state Department of Corrections is charged with "promulgat[ing] administrative regulations… to implement a simplified process for the restoration of civil rights to eligible felony offenders." KY. REV. STAT. ANN. § 196.045(1). Accordingly, every month the Department forwards information regarding "eligible felony offenders who have

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor may be automatically substituted as a party.

requested restoration of rights to the Office of the Governor for consideration of a partial pardon." KY. REV. STAT. ANN. § 196.045(1)(e).

On October 29, 2018, Plaintiff Deric Lostutter brought suit in this Court against the Commonwealth of Kentucky, seeking temporary and permanent injunctive relief. (DE 1.) Plaintiff amended the complaint four times, and various parties were added and removed. (DE 10; DE 12; DE 25; DE 31.)[2] Plaintiffs in the operative pleading are all disenfranchised residents of Kentucky with felony convictions who wish to register and vote in future elections. (DE 31 at 7, 8-12.) They bring this action pursuant to 42 U.S.C. § 1983, alleging that the governor has violated their First Amendment rights. (DE 31 at 6.) They seek a declaratory judgment that the state voting rights restoration scheme – "enshrined in" Section 145 of the Kentucky state constitution and KY. REV. STAT. ANN. §§ 116.025[3] and 196.045 – violates the First Amendment; a permanent injunction that enjoins the governor "from subjecting Plaintiffs' right to vote to the unconstitutional arbitrary voting restoration scheme" under these provisions; and a permanent injunction that orders the governor to replace the current scheme with one that is non-arbitrary and "restores the right to vote to felons based upon specific, neutral, objective, and uniform rules and/or criteria." (DE 31 at 26-27.)

---

[2] On January 7, 2019, the Court issued an order directing Plaintiffs to either file their Fourth Amended Complaint with Defendants' consent or seek leave of the Court to file the amended pleading. (DE 29.) On February 4, 2019, Plaintiffs simply filed the Fourth Amended Complaint into the record without a representation that Defendant had consented, or with an accompanying motion that sought leave of the Court. (DE 30; DE 31.) Because Defendant never challenged this amendment pursuant to Federal Rule of Civil Procedure 15(a), the Court presumes that the amendment was made with the requisite consent. Although the required procedure outlined in Rule 15(a)(2) for amending a pleading appears to have been overlooked, the Court accepts the Fourth Amended Complaint as the operative pleading in this matter because doing so would cause no prejudice to any of the parties.

[3] KY. REV. STAT. ANN. § 116.025 ("Eligibility to vote") incorporates § 145 of the Kentucky constitution into the state's election code ("Every person… who is not disqualified under [Section 145 of the Constitution] or under any other statute…").

On February 15, 2019, the governor filed a motion to dismiss the complaint. (DE 32.) On August 30, 2019, the Court issued an order granting the motion to dismiss as to one of the plaintiffs, but otherwise denying the motion because, in the Court's judgment, the remaining issues in the case, given their significance, should be resolved on summary judgment. (DE 35.) The parties' cross-motions for summary judgment were filed on November 25, 2019. (DE 46; DE 47.)

On December 12, 2019 – seven days after the close of briefing on the cross-motions for summary judgment – newly-inaugurated Governor Andy Beshear signed Executive Order 2019-003, "Relating to the Restoration of Civil Rights for Convicted Felons." The Executive Order restores the right to vote and the right to hold public office to a subset of individuals from whom those rights had been denied by judgment of conviction; specifically, those who are "offenders convicted of crimes under Kentucky state law who have satisfied the terms of their probation, parole, or service of sentence… exclusive of restitution, fines, and any other court-ordered monetary conditions." The Executive Order notes that it does not restore voting rights to those who have been convicted of certain state law crimes, specified in the Executive Order. It also notes that "no civil rights shall be restored pursuant to this Order to any person who has at the time of Final Discharge any pending felony charges or arrests, nor to any person who was convicted under federal law or the laws of a jurisdiction other than Kentucky."

## Analysis

The Executive Order was issued shortly after the summary judgment briefing was completed; accordingly, the parties have not addressed whether it moots Plaintiffs' claims.[4] However, the Court can – and, in this case, must – consider mootness *sua sponte*. *See Berger v. Cuyahoga Cty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993) (noting that "[q]uestions of jurisdiction are fundamental matters which [a court] may review sua sponte," and that courts may "address the problem of mootness on [their] own motion"). "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) (citation omitted). "[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004) (citation and internal quotation marks omitted). "[R]epeal or amendment of a challenged statute while a case is pending... usually eliminates [the] requisite case-or-controversy because a statute must be analyzed... in its present form," and, accordingly, "the Supreme Court has routinely declared moot those claims effectively nullified by statutory amendment pending appeal." *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997).

Plaintiffs' Fourth Amended Complaint alleges that "[t]here are no laws, rules, or criteria regulating the Governor's decisions to grant or deny restoration applications and, as such, the scheme runs afoul of the First Amendment to the U.S. Constitution." (DE 31 at 3.) Plaintiffs claim that "[t]he decision whether to grant or deny a felon's restoration application rests with the Governor's unfettered discretion," and that "[a]pplicants may be granted or

---

[4] Three of the plaintiffs in this case moved to voluntarily dismisses themselves because they became eligible to vote under the Executive Order; the Executive Order was entered into the record as an exhibit to that motion. (DE 53.)

denied for any reason." (DE 31 at 4.) They argue that, because the governor "has absolute discretion in deciding whether to grant or deny voting rights restoration applications… Kentucky's arbitrary voting rights restoration system violates the First Amendment." (DE 46 at 8.) Plaintiffs analogize the process by which state governments, like Kentucky's, re-enfranchise felons to other instances in which officials "grant or deny licenses or permits to engage in First Amendment-protected… activity." (DE 46 at 6.)[5] They claim that the Supreme Court has consistently struck down "administrative licensing regimes that conferred limitless discretion as to a wide range of First Amendment freedoms," and that this case is "not materially different from the unconstitutional licensing schemes struck down" in those cases. (DE 46 at 6-7, 8.)

The Executive Order, however, appears to provide the relief that Plaintiffs seek: non-arbitrary criteria to guide restoration of the franchise. Those criteria are the nature and seriousness of the disenfranchised person's felony conviction; pursuant to the Executive Order, felons who have been convicted of state-law crimes (with the exception of certain, specified offenses) and have served their sentences are automatically re-enfranchised. Kentucky's amended re-enfranchisement scheme thus appears to be consistent with at least Plaintiffs' proffered interpretation of what the First Amendment allows. The Executive Order, accordingly, renders Plaintiffs' claims moot.[6] *See Friedman's, Inc. v. Dunlap*, 290 F.3d

---

[5] The Supreme Court has held that "[a] government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view," and the Court has advised that "[t]o curtail that risk, a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority." *Forsyth Cty. v. The Nationalist Movement*, 505 U.S. 123, 130-31 (1992) (citations and internal quotation marks omitted).

[6] Count Two in the operative pleading complains of an alleged "lack of reasonable, definite time limits for decisions on voting rights restoration applications" as a separate violation of the First Amendment. (DE 31 at 23.) The Executive Order moots this claim because a plain reading could only suggest that it takes immediate effect to re-enfranchise those who qualify for suffrage pursuant to its stated criteria. (DE 53-1 at 3, 4 ("hereby restored;" "automatic restoration").)

6

191, 197 (4th Cir. 2002) ("one such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim").

The Court is mindful that "[v]oluntary cessation of the alleged illegal conduct does not, as a general rule, moot a case." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019). Even if the Executive Order merely indicates the voluntarily cessation of an unconstitutional practice, "the burden in showing mootness is lower when it is the government that has voluntarily ceased its conduct," *id.*, and "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties," *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012) (citation and internal quotation marks omitted). Voluntary cessation "provides a secure foundation for a dismissal based on mootness so long as it appears genuine," *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (citations omitted), and this Court will "presume that the same allegedly wrongful conduct by the government is unlikely to recur," *Speech First*, 939 F.3d at 767.

Another, and similar, exception to mootness "applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Cases establishing this exception, "[c]losely related to the 'voluntary cessation' decisions," are those "in which the alleged wrong has ceased but the wrong is capable of repetition, yet evading review." RICHARD H. FALLON, JR., ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 203 (7th ed. 2015). While Executive Order 2019-003 might, in theory, be revoked by this, or future, Governors of the Commonwealth of Kentucky, that determination would be entirely speculative; the issue has, obviously, not been briefed by the parties. "The requisite degree of likelihood" of repetition in

the "capable of repetition, yet evading review" exception "is unclear," but "[t]he Court has spoken of a 'reasonable expectation' or 'demonstrated probability' that the controversy would recur and insisted that a 'mere physical or theoretical possibility' was insufficient." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). The record does not provide for a reasonable expectation or demonstrated probability that these plaintiffs will again be subjected to an entirely arbitrary felon re-enfranchisement scheme under Kentucky law.

What will be the fate of suffrage for those Kentuckians with felony convictions who – like the remaining plaintiffs in this matter – have not been automatically re-enfranchised by the Executive Order? By its own terms, the Executive Order instructs that they may still apply for re-enfranchisement by the governor. Even if the governor maintains some discretion within the re-enfranchisement scheme to deny voting rights to these plaintiffs, their claims are nonetheless moot because their suit does not seek their own re-enfranchisement. Plaintiffs allege in the complaint that Kentucky's voting rights restoration scheme violates the First Amendment because it allows the governor unfettered and absolute discretion in denying re-enfranchisement to convicted felons. The governor's discretion is no longer unfettered and absolute because, under the Executive Order, the scheme now automatically re-enfranchises those who have been convicted of state-law felonies (with specific exceptions). Plaintiffs seek a non-arbitrary system for restoring the franchise to convicted felons that is guided by objective criteria – it appears that they have received that relief.

During the pendency of this litigation, the landscape of felon re-enfranchisement in Kentucky changed and, in the Court's view, Plaintiffs have received that which their complaint seeks. They may have separate grounds to challenge the amended voting rights restoration scheme, but the constitutionality of this amended scheme is not presently before the Court. Therefore, and without prejudice to a possible renewed and revised effort to

8

challenge the current process of felon re-enfranchisement in Kentucky, the Court finds that Plaintiffs' claims are moot.

## Conclusion

Accordingly, the Court hereby ORDERS that:

1) Plaintiff's Fourth Amended Complaint (DE 31) is DISMISSED;

2) Plaintiff's Motion for Summary Judgment (DE 46) is DENIED as moot;

3) Defendant's Motion for Summary Judgment (DE 47) is DENIED as moot; and

4) a judgment will be entered contemporaneously with this order.

Dated August 14, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY