# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# LONDON

| | |
|---|---|
| **DERIC LOSTUTTER, ET AL.,**  Plaintiffs,  v.  **ANDREW BESHEAR, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF KENTUCKY,**  Defendant. | CIVIL NO. 6:18-277-KKC  **OPINION AND ORDER** |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on cross-motions for summary judgment. In their motion, Plaintiffs Deric Lostutter, Robert Calvin Langdon, and Bonifacio R. Aleman ask the Court to hold that Kentucky's system for restoring the voting rights of persons convicted of felonies violates the First Amendment of the United States Constitution and to order Defendant Andrew Beshear, the governor of Kentucky, to create a system governed by specific rules, criteria, and definite time limits. (R. 46.) The Governor's motion argues that Kentucky's reenfranchisement scheme does not run afoul of the First Amendment and asks the Court to grant summary judgment in his favor on the Plaintiffs' claims. (R. 47-1.) For the reasons stated in this Opinion, the Court will deny Plaintiffs' motion and grant summary judgment in favor of the Governor of Kentucky.

## BACKGROUND

### I. Procedural History

On October 29, 2018, Plaintiff Deric Lostutter sued the Commonwealth of Kentucky in this Court, seeking temporary and permanent injunctive relief. (R. 1.) Plaintiff amended the complaint four times, and various parties were added and removed. (R. 10; R. 12; R. 25; R. 31.) Plaintiffs in the operative pleading are all disenfranchised residents of Kentucky with felony convictions who wish to register and vote in future elections. (R. 31 at 7, 8–12.)

On February 15, 2019, the governor filed a motion to dismiss the complaint. (R. 32.) The Court issued an order granting the motion to dismiss as to one of the plaintiffs, but otherwise denying the motion because, in the Court's judgment, the remaining issues in the case, given their significance, should be resolved on summary judgment. (R. 35.) The parties' cross-motions for summary judgment were filed on November 25, 2019. (R. 46; R. 47.)

Seven days after the close of briefing on the cross-motions for summary judgment, newly-inaugurated Governor Andrew Beshear signed an executive order that automatically restores the right to vote and right to hold office to persons convicted of certain felony offenses. The order does not apply to persons convicted of certain state law crimes (such as treason, bribery in an election, and certain violent offenses), and those persons must still apply to have their rights restored.

Following the issuance of the executive order, the Court dismissed Plaintiffs' claims on summary judgment after concluding that the Governor's order appeared to provide the only relief Plaintiffs requested: non-arbitrary criteria to guide the process for restoration of voting rights. (R. 55.) The order further stated that, even if the Governor maintained discretion with respect to restoring Plaintiffs' voting rights, their claims were moot because they did not seek the restoration of these rights. (*Id.*)

The United States Court of Appeals for the Sixth Circuit reversed this Court's decision on appeal. In its opinion, the Sixth Circuit concluded that while the Governor's order established a non-discretionary restoration track for certain felons, Lostutter and Langdon do not qualify because they were convicted, respectively, of a federal offense and of second-degree assault under Kentucky law. *Lostutter v. Kentucky*, No. 21-5476, 2021 WL 4523705, 2021 U.S. App. LEXIS 29976, at *5 (6th Cir. Oct. 4, 2021). Because the Governor's order does not apply to them, Lostutter and Langdon's claims are not moot because they must apply for restoration of their voting rights and thus remain subject to the discretionary restoration scheme they seek to challenge. *Id*. Additionally, the Sixth Circuit held that Plaintiffs claims were not moot because of their failure to seek restoration of their voting rights, and thus that Aleman's claims might not be moot. *Id*. at *5–6. Accordingly, the case was remanded for this

Court to address the Plaintiffs' challenges to Kentucky's discretionary voting rights restoration scheme.

On remand, this Court ordered the parties to meet and report on the status of the case. (R. 65.) The parties agreed that the case is ready for resolution based on previously submitted cross-motions for summary judgment and that no further filings were necessary. The matter is therefore ripe for review.

## II.   Kentucky's Felon Reenfranchisement Scheme

In Kentucky, a person convicted of a felony does not have the right to vote. Ky. Const. § 145(1). However, the right to vote may be restored by an executive pardon issued by the Governor. Ky. Const. § 145(1). The restoration provision of Kentucky's Constitution is self-executing and gives the Governor the power "to effect such restorations." *Arnett v. Stumbo*, 153 S.W.2d 889, 890 (Ky. 1941).

Although the Governor's power to restore a felon's ability to vote is self-executing, Kentucky Revised Statute § 196.045 provides the administrative process by which a person's right to vote may be restored: a person convicted of a felony may submit an application for restoration of civil rights to the state Department of Corrections and, if the Department of Corrections determines that the felon qualifies as an "eligible offender," the application will be forwarded to the Governor "for consideration of a partial pardon."

In 2019, Kentucky Governor Andrew Beshear signed Executive Order 2019-003, "Relating to the Restoration of Civil Rights for Convicted Felons." EO 2019-003 automatically restores the right to vote and the right to hold public office to "offenders convicted of crimes under Kentucky state law who have satisfied the terms of their probation, parole, or service of sentence . . . exclusive of restitution, fines, and any other court-ordered monetary conditions." However, the Executive Order does not automatically restore the right to vote for those convicted of certain specified state crimes. It further notes that "no civil rights shall be restored pursuant to this Order to any person who has at the time of Final Discharge any pending felony charges or arrests, nor to any person who was convicted under federal law or the laws of a jurisdiction other than Kentucky."

If a person with a felony conviction does not qualify for automatic restoration of their civil rights under the Executive Order, they can submit an application for restoration under KRS 196.045 and the guidelines set by the Governor. There are no criteria or guidelines that the Governor must use when deciding to grant or deny a restoration application, and "the Governor is vested with a broad and virtually unfettered discretion to pardon," *Fletcher v. Graham*, 192 S.W.3d 350, 365 (Ky. 2006).

## ANALYSIS

### I. Plaintiffs Do Not Have Standing to Challenge Kentucky's Reenfranchisement Scheme

Plaintiffs argue that they have standing to challenge Kentucky's reenfranchisement scheme even though they have not applied for restoration of their voting rights. (R. 46 at 5.) The Governor challenged Plaintiffs' standing in his motion to dismiss, (R. 32-1 at 9–11), but he does not argue the issue on summary judgment. However, because it is a threshold question and jurisdictional requirement, the Court must address the issue of Article III standing anytime it arises. *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 899 F.3d 437, 443 (6th Cir. 2018) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Article III requires a plaintiff to establish three elements: (1) an "injury in fact," (2) a causal connection between the alleged injury and the defendant's conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The party claiming federal jurisdiction has the burden of establishing standing, and each element must be established in the same manner and with the same degree of evidence as any other matter at the given stage of the litigation. *Id.* at 158.

#### A. Plaintiffs Have Failed to Show They Have Suffered an Injury in Fact

The present case turns on the "first and foremost" of those elements: injury in fact. *Huff v. Telecheck Servs.*, 923 F.3d 458, 462 (6th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)) (cleaned up). To establish injury in fact, a plaintiff must show they have suffered an invasion of a legally protected interest that is "real, not abstract,

actual, not theoretical, [and] concrete, not amorphous." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016)). The most obvious way this element can be satisfied is by showing actual injury, which here could be done by having a voting rights restoration application denied. But Article III standing can also be satisfied by allegations of future injury, so long as the threatened harm is "certainly impending" or there is a "substantial risk that the harm will occur." *Driehaus*, 573 U.S. at 158.

Here, it is not immediately apparent that Plaintiffs have suffered an injury in fact because they have never participated in the reenfranchisement scheme they challenge. Three plaintiffs remain in the case: Langdon, Aleman, and Lostutter. (*See* R. 66 at 2, n.1.) Langdon has applied for restoration of his right to vote, and he states that his application is pending before the Governor. (R. 31 ¶ 7.) Aleman and Lostutter have not applied. (R. 31 ¶ 7.)

Plaintiffs maintain that standing is not dependent on their having applied for and been denied restoration of their voting rights. They argue that Kentucky's reenfranchisement scheme constitutes an administrative licensing scheme governing the exercise of rights protected by the First Amendment, and that the Supreme Court has held that plaintiffs are not required to apply for and be denied a license to challenge such an administrative scheme's constitutionality. (R. 46 at 5 (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56 (1988).) On this point, the Governor disagrees.[1] He argues that Kentucky's reenfranchisement scheme and an administrative licensing scheme are "two different things entirely," and that a person convicted of a felony's interest in having their right to vote restored is "nothing like one's interest in receiving a license or a permit." (R. 47-1 at 19.)

### 1.  *Kentucky's Voter Restoration Scheme Is Not an Administrative Licensing Scheme*

When bringing a facial challenge to a licensing scheme that allegedly gives government officials unlimited discretion to grant or deny licenses or permits that a person

---

[1] Like their theory of standing, Plaintiffs' theory on the merits of their case rests on their argument that Kentucky's voting rights restoration scheme constitutes an administrative licensing scheme. The Governor did not address the issue of standing on summary judgment, but his arguments as to the substantive merits of the case are applicable here. Though the Court only addresses the issue of Article III standing in this Opinion, the analysis would apply with equal force to the substantive merits of Plaintiffs' argument.

must obtain to engage in activity protected by the First Amendment, the injury in fact element can be satisfied "without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56 (1988). However, *City of Lakewood* is only applicable to the present case if Kentucky's felon reenfranchisement laws constitute a licensing or permitting scheme. Plaintiffs argue that an executive pardon restoring the right to vote is the same as a permit or license allowing a person to vote. This argument misses the mark.[2]

"Licensing" generally refers to "[a] governmental body's process of issuing a license," and a "license" is "permission, usually revocable, to commit some act that would otherwise be unlawful." *Licensing*, *Black's Law Dictionary* (11th ed. 2019). And though often used interchangeably with the term "license," a "permit" is defined as the certificate or official written statement evidencing that someone has permission or the right to do something. *Permit*, *Black's Law Dictionary* (11th ed. 2019).

A pardon, on the other hand, is "[t]he act . . . of officially nullifying punishment or other legal consequences of a crime." *Pardon*, *Black's Law Dictionary* (11th ed. 2019); *see also Fletcher*, 192 S.W.3d at 362 ("A 'pardon' is the act or an instance of officially nullifying punishment or other legal consequences of a crime.") (cleaned up).[3] Receipt of a pardon can give a pardonee permission to do something that would otherwise be unlawful, such as vote, and in that narrow respect it bears some superficial similarity to a license. But a pardon cannot be characterized as a mere license to vote—restoration of the right to vote is just one of several potential effects of a pardon.

---

[2] The Eleventh Circuit has recently, and persuasively, considered similar arguments, and in response stated that "[t]hose cases established the longstanding and important but (for our purposes) unremarkable point that a state cannot vest officials with unlimited discretion to grant or deny licenses as a condition of engaging in protected First Amendment activity." *Hand v. Scott*, 888 F.3d 1206, 1212-13 (11th Cir. 2018). "However, this precedent does not bear directly on the matters presented by this case. Indeed, none of the cited cases involved voting rights or even mentioned the First Amendment's interaction with the states' broad authority expressly grounded in § 2 of the Fourteenth Amendment to disenfranchise felons and grant discretionary clemency." *Id.* at 1213.

[3] "Courts have examined pardons in light of their scope in the state where the pardon was issued to determine whether the pardon has the same effect as expunging the conviction by executive order." *West v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:20-CV-00820-GNS, 2022 WL 468050, 2022 U.S. Dist. LEXIS 26898, at *7 (W.D. Ky. Feb. 14, 2022) (collecting cases).

Generally, a pardon has the effect of "removing all legal punishment for the offense and restoring one's civil rights . . . ." *Harscher v. Commonwealth*, 327 S.W.3d 519, 522 (Ky. Ct. App. 2010) (citing *Nelson v. Commonwealth*, 109 S.W. 337, 338 (Ky. 1908)). Loss of the right to vote is just one consequence of a felony conviction, and a pardon can do much more than remove that single consequence—it can nullify a prison sentence, restore other civil rights, and expunge the conviction. *See, e.g., Anderson v. Commonwealth*, 107 S.W.3d 193 (Ky. 2003) (examining the language of a pardon to determine whether it restored the pardonee's right to sit on a jury); *Cheatham v. Commonwealth*, 131 S.W.3d 349 (Ky. Ct. App. 2004) (holding that a pardon issued pursuant to sections 145 and 150 of the Kentucky Constitution was a partial pardon restoring only the pardonee's rights to vote and hold office, but not the right to possess a firearm); *Jones v. Commonwealth*, No. 2020-CA-0790-MR, 2021 WL 3118096, 2021 Ky. App. Unpub. LEXIS 440 (Ct. App. July 23, 2021) (examining the language of an executive order to determine whether it constituted a pardon or commutation). A pardon is also retrospective, as opposed to prospective. A pardon nullifies the legal consequences of one's past actions, whereas a license prospectively grants one permission to do something that would otherwise result in legal consequences.

A pardon can also invalidate or expunge a conviction if it includes appropriately strong invalidating language, such as by referring to the pardonee's innocence or otherwise "question[ing] or discredit[ing] a judicial finding of guilt." *See West v. Louisville Jefferson Cnty. Metro Gov't,* 2022 WL 468050, 2022 U.S. Dist. LEXIS 26898, at *8–9 (W.D. Ky. Feb. 14, 2022) (holding that a "full and unconditional pardon" restoring "all rights and privileges" does not invalidate the pardonee's conviction and entitle him to expungement where the pardon "made no reference to the pardonee's innocence or expungement of her record"). "Expungement is equivalent to official erasure, a 'removal of a conviction [or here, charge] from a person's criminal record.'" *Hermansen v. White*, 2014 WL 4182453, 2014 U.S. Dist. LEXIS 116620, at *11 (E.D. Ky. June 27, 2014), *report and recommendation adopted*, 2014 WL 4182453, 2014 U.S. Dist. LEXIS 116758 (E.D. Ky. Aug. 21, 2014) (quoting *Black's Law Dictionary*). After a conviction is expunged, the "criminal process itself" is "deemed to have never occurred," and the person no longer must disclose the fact of conviction "or any matter

relating thereto on an application for employment, credit, or other type of application." *Moore v. Louisville/Jefferson Cnty. Metro. Gov't*, No. 2020-CA-1296-MR, 2022 WL 67441, 2022 Ky. App. LEXIS 1, at *8–9 (Ct. App. Jan. 7, 2022) (citing Ky. Rev. Stat.§ 431.076(6)).

A pardon is fundamentally different than a license and cannot be fairly characterized as a mere license to vote. Restoring a felon's right to vote is just one of many possible effects of a pardon. Beyond that single superficial similarity, a license and a pardon bear virtually no resemblance to one another. The nature of a pardon is to extend grace to a person with regard to certain consequences of their actions. A license, on the other hand, simply gives a person permission to engage in regulated activity. The Plaintiffs' argument is simply incorrect—in Kentucky, an executive pardon is not a license.

### 2. *Plaintiffs' Alleged Injuries Are Hypothetical and Abstract*

Because the Commonwealth's reenfranchisement scheme is not a licensing scheme, *City of Lakewood* is inapplicable to the present case. Plaintiffs therefore have the burden of showing that they (1) suffered an injury, (2) caused by the Governor, (3) that a judicial decision could redress."*Huff*, 923 F.3d at 462 (citing *Lujan*, 504 U.S. at 560–61). However, Plaintiffs' theory of standing rests entirely on the argument that they are challenging a licensing scheme, which the Court has rejected.

The only injury Plaintiffs have alleged is that they are harmed by the mere possibility of having a restoration application denied by the Governor. Although an intangible injury can satisfy the injury-in-fact requirement, the injury must be "real" and "not abstract." *Spokeo*, 136 S. Ct. at 1550. Plaintiffs have not shown that the Governor's discretion has caused them any actual injury—two plaintiffs have not even applied to have their rights restored, much less had their application denied. Accordingly, they have "suffered no denial, or other injury, that would allow [them] to challenge the reinstatement process." *El-Amin v. McDonnell*, 2013 WL 1193357, 2013 U.S. Dist. LEXIS 40461, at *16 (E.D. Va. Mar. 22, 2013). Because the injury alleged by Plaintiffs is entirely hypothetical and abstract, they do not have standing to challenge the Commonwealth's felon reenfranchisement scheme, and consequently this Court lacks authority to hear their claims.

## CONCLUSION

Accordingly, for the reasons stated in this Opinion, it is hereby **ORDERED** that Plaintiffs' claims are **DISMISSED** without prejudice for lack of standing. Plaintiffs' and Defendant's motions for summary judgment (R. 46, 47) are therefore **DENIED** as moot and this matter shall be **STRICKEN** from the active docket.

Dated July 22, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY